ROBERT CHINOWETH, JAMES TRACY AND THOMAS WILMOUTH, PLAINTIFFS IN ERROR *vs.* THE LESSEE OF BENJAMIN HASKELL AND OTHERS, DEFENDANTS.

The defendant in the court below having withdrawn his cause from the jury by a demurrer to evidence, or having submitted to a verdict for the plaintiff, subject to the demurrer, cannot hope for a judgment in his favour, if by any fair construction of the evidence the verdict can be sustained.    [96]

It is an obvious principle that a grant must describe the land to be conveyed, and that the subject granted must be identified by the description given of it in the instrument itself.  The description of the land consists of the courses and distances run by the surveyor, and of the marked trees at the lines and corners, or other natural objects which ascertain the very land which was actually surveyed.    [96]

If a grant be made which describes the land granted by course and distance only, or by natural objects not distinguishable from others of the same kind, course and distance though not safe guides are the only guides given, and must be used.    [96]

The line which forms the western boundary of the land intended to be granted was never run or marked.  In his office the surveyor assumed a course and distance, and terminates the line at two small chesnut oaks.  But where are we to look for those two small chesnut oaks in a wilderness in which one man takes up fifty thousand acres and another one hundred thousand? or how are we to distinguish them from other chesnut oaks.  The guide, and the only guide given us by the surveyor or by the grant, is the course and distance.    [96]

It is admitted that the course and distance called for in a grant may be controlled and corrected by other objects of description which show that the survey actually covered other ground than the lines of the grant would comprehend.    [98]

WRIT of error to the district court of the western district of Virginia.

This case was argued by Mr Doddridge, for the plaintiff in error, no counsel appearing for the defendant.   He contended :

1. That Wilson does not prove the making of any actual survey of the three last lines, and all that he does prove is that he protracted them.

2. That in protracting the line D. E. he guessed at a course

[Chinoweth et al. *vs.* Lessee. of Haskell et al.]

and distance whicir he supposed would reach Young's corner; which he missed about five miles.

3. That he only proves it to have been his *intention* to go to Young's corner. He did not in this certificate of survey call for a corner to Young, but only for two chesnut oaks in a country where there is scarcely any other timber.

4. That course and distance, as called for, may be corrected by other matters of description in the certificate and grant, by any natural call or description which may identify a corner, or render it certain ; as " two chesnut oaks, corner to Robert Young's survey of one hundred thousand acres, &c. the first, second, or third corner, &c." Such correction of course and distance cannot be made by a secret, undisclosed intention that the two chesnuts he called for should be those 'at one of Young's corners.

5. The course and distances called for in the grant will locate the grant on the waters and water courses, precisely as stated in the grant. This appears by the surveyor's diagram, which with the grant is record evidence of this fact. Let the courses and distances called for be varied according to Wilson's secret intention, the case will be very different:

The grant calls to be on part of Clover run, on Cheat river, and to include the waters of Pheasant run. These descriptions suit either mode of locating the grant : but the grant calls to be on the *waters of Tygart valley*, and to include *part of* the waters of Hornback's run and the cherry tree fork of Leading creek. Whereas, as he would locate his grant, it will include not only part of the waters of Hornback's run and the Cherry Tree fork of Leading creek, but *all* these two streams and their waters, and even all Leading creek itself, of which they are small branches ; and his survey will be, not on the waters of Tygart valley river, but on the river itself, crossing it four times.

Mr Chief Justice MARSHALL delivered the opinion of the court.

The judgment in this cause was rendered by the court of the United States, for the western district of Virginia, in an ejectment brought by the defendants in error, to recover

fifty thousand acres of land, a part of which was in the occupation of the defendants in the court below. The defendants in that court disclaimed as to the part of the land for which judgment was entered against the casual ejector, and went to trial as to the residue. The original plaintiffs having the eldest title, the case depended entirely on the question whether their grant covered the land in dispute. If it be surveyed according to the courses and distances called for, it will entirely exclude that land. The plaintiffs, however, claim to survey it in such manner as to comprehend the tenements in possession of the defendants.

A survey was made, and the diagram of the surveyor, with his report, exhibits the respective claims of the parties. The diagram A. B. C. D. E. F. A. represents the land claimed by the plaintiffs. A. B. C. D. G. H. A. represents the land, which, as the defendants contend, the grant to the plaintiffs ought to cover. A. B. C. and D. form the northern side of the tract, and are admitted by both parties to be correctly laid down. The question is whether the next line should run from D. to E. as contended by the plaintiffs, or from D. to G. as contended by the defendants. The line from D. to G. corresponds in course and distance with the call of the patent; it is S. nine W. four thousand six hundred poles. The line from D. to E. is S. twenty-eight degrees nine minutes west, four thousand eight hundred and fifty-four poles, varying nineteen degrees nine minutes from the course, and two hundred and fifty-four poles from the distance. This variance places the corner at E. about five miles west from that at G., and produces a correspondent change in the two remaining lines which form the southern and western sides of the land.

At the trial, the defendants demurred to the plaintiffs' testimony, and the jury found a verdict for the plaintiffs, subject to the opinion of the court on the demurrer. The court overruled the demurrer and gave judgment for the plaintiffs.

The demurrer states that at the trial the plaintiff gave in evidence the plat and report made by the surveyor, which show that the lines from A. to D. which bind the land on north, conform to the patent. That the other three lines D.

E., E. F. and F..A. which inclose the land on the west, south, and east, are not marked, nor is any corner found at F.   At E. two chesnut oaks were found where two chesnut oaks were called for in the patent.   They are marked as a corner previously made for Robert Young.   The lines D. G., G. H. and H. A. laid down by the directions of the defendants conformably to the patent, are not marked.

The plaintiffs also gave in evidence the patent under which they claimed; dated the 9th of July 1796, the conveyance of the patentees to them, and an official copy of the plat and certificate of survey on which the grant was founded.   The land is described as lying on the waters of Tygart valley river, Cheat river, to include the waters of Pheasant run and a part of Clover run, part of the waters of Benjamin Hornback's and Cherry Tree fork of Leading creek.   They also gave in evidence the grants under which the defendants claimed, with the entries and surveys on which they were founded, which were younger than that under which the plaintiffs claimed. They also read the deposition of William Wilson.   He deposes that he made the survey of fifty thousand acres in 1795. He proves that he began at A. and ran the line on the north side of the tract to D.   He then protracted a line intended to strike two chesnut oaks near the head of James's run by the side of a path leading from Tygart valley to the mouth of Seneca, which was a corner he had previously marked to a survey of one hundred thousand acres he had made for Robert Young.   From those two chesnut oaks he ran to Tygart valley river.   Not having a sufficient distance, and finding that the line would cross the river several times, he extended the course and called for a white oak, because he knew there were white oaks there about.   He does not know whither the course and distance would have carried him to the east or west side of the river.   He then protracted a line to the beginning.   On being cross examined he said he made the line from D. to E. in his office, and laid it down, intending to hit the two chesnut oaks near James's run.   He went to the two chesnut oaks and ran to the river (not quite half the line E. F.) where he stopped, and continued the line E. F. the proper distance, and also protracted the closing line F. A.   He had no axe-

man with him, consequently marked no trees. He was accompanied by only one individual, and does not allege that a chain was stretched.

The defendants in the district court having withdrawn their cause from the jury by a demurrer to evidence, or having submitted to a verdict for the plaintiffs subject to that demurrer, cannot hope for a judgment in their favour, if, by any fair construction of the evidence, the verdict can be sustained. If this cannot be done, the judgment rendered for the defendants in error must be reversed.

It is an obvious principle that a grant must describe the land to be conveyed, and that the subject granted must be identified by the description given of it in the instrument itself. For the purpose of furnishing this description and of separating the land from that which is not appropriated, the law directs a survey to be made by sworn officers, who, " at the time of making such survey, shall see the same bounded plainly by marked trees, except where a water course or ancient marked line shall be the boundary." The persons employed to carry the chain are to be sworn by the surveyor to measure justly and exactly to the best of their abilities. The description of the land thus made by a survey is transferred into the grant. It consists of the courses and distances run by the surveyor, and of the marked trees at the lines and corners, or other natural objects which ascertain the very land which was actually surveyed. The courses and distances are less certain and less permanent guides to the land actually surveyed and granted, than natural and fixed objects on the ground; but they are guides to some extent, and, in the absence of all others, must govern us. If a grant be made which describes the land granted by course and distance only, or by natural objects not distinguishable from others of the same kind, course and distance, though not safe guides, are the only guides given us, and must be used.

In the case at bar the line from D. to E. or from D. to G. which forms the western boundary of the land intended to be granted, was never run or marked. In his office, the surveyor assumed a course and distance, and terminates the line at two small chesnut oaks. But where are we to look

for these two small chesnut oaks in a wilderness in which one man takes up fifty thousand acres of land, and another one hundred thousand ? Or how are we to distinguish them from other chesnut oaks ? The guide and the only guide given us by the survey, or by the grant, is the course and distance. We are to find them at the end of a line of four thousand six hundred poles, to be run south nine degrees west from the established corner at D. We are furnished with no other guide which may conduct us to them. That the surveyor had in his mind the two small chesnut oaks which he had marked as a corner to Robert Young can be of no avail, since he has not indicated this intention on his survey. He has impliedly indicated the contrary. When the established line or corner of a prior survey is made part of a boundary, it is usual to designate such marked line or corner by naming the person whose line or corner it is. The call for two small chesnut oaks without farther description, would rather exclude the idea that they were already marked as the corner of a previous survey.

The fact that the surveyor on a subsequent day went to Young's corner, and without marking it as a corner for the survey he was then employed to make, walked along the line he intended for the southern boundary of the land nearly half the distance, without marking a single tree, cannot in any manner affect the case.

In estimating this evidence we may inquire what weight would be allowed to it if the grantee claimed to hold the land actually within his patent lines, and this testimony was opposed to him by a junior patentee within those lines ? We believe that no person would hesitate an instant to say that his title to the land actually within the lines of his patent, was unquestionable. He cannot be permitted after the grant has issued to elect what ground it shall cover.

This opinion derives some additional weight from the general description of the country as made in the grant, and as shown on the plat and report of the survey made by order of court in the cause.

The grant calls to be on the waters of Tygart valley, and to include part of the waters of Hornback's run, and the

Cherry Tree fork of Leading creek. This description accords with the survey as required by the plaintiffs in error. The grant, if placed as the defendants in error claim to place it, will include, as is shown by the survey made in the cause, not only part of the waters of Hornback's run and the Cherry Tree fork of Leading creek, but all these two streams, and even all Leading creek itself, of which they are small branches. It will also, instead of being on the waters of Tygart's valley river, lie on the river itself, which it crosses several times. The general description then contained in the grant, fits the land comprehended within the lines of the patent much better than it does that which is claimed by the defendants in error.

It is admitted that the course and distance called for in a grant may be controlled and corrected by other objects of description which show that the survey actually covered other ground than the line of the grant would comprehend. If the grant, in this case, had called for two small chesnut oaks marked as a corner to Robert Young's survey of one hundred thousand acres, the mistake in the course and distance would not have prevented the line from being run from the corner at D. to the chesnut oaks. So if a plain marked line, originally run from the one corner to the other, had shown that the land claimed was the land actually surveyed. But neither the grant nor the face of the plat furnishes any information by which the corner called for in the grant can be controlled. We are therefore of opinion that the defendant in error is not entitled to the land shown by the survey made in the cause to be in possession of the plaintiffs in error, and that the demurrer ought to have been sustained.

The judgment is reversed and the cause remanded with directions to enter judgment in favour of the defendants in the district court.