UNITED STATES v. McKEE et al.

(District Court, N. D. California. March 25, 1904.)

No. 1,626.

**1. BOUNDARIES—ORIGINAL MONUMENTS—FIELD NOTES.**

Where, in an action involving a disputed boundary line, there were no original monuments or standard corners west of a certain section corner to be found on either one of the lines claimed as the southern boundary of a township, in the absence of other evidence showing its location, the court was required to look to the field notes of the original survey for the purpose of determining where the line was originally run.

**2. SAME.**

Where a re-establishment of a township line in courses and distances agreed with the field notes of the original survey, and the difference between that line and the line fixed by other surveyors, contended by defendants to be the proper line, was too great to be accounted for on the supposition of an inaccuracy of measurement or error of computation in running the original line, and in addition defendant's line crossed a certain river twice, which fact was not mentioned in the field notes of the original survey, defendants' line will be disregarded.

**3. SAME—PUBLIC LANDS—TRESPASS—BARK—CONVERSION—DAMAGES.**

Where bark was taken by defendants from trees on the public domain by reason of defendants' misapprehension of the true location of a township boundary line, and three surveyors had erroneously located the line before the alleged trespass in accordance with defendants' contention, proceeding on an erroneous theory, and there was no evidence that defendants knew or believed that such line was erroneous, or that the true boundary line was that fixed by a previous resurvey, they were not guilty of willful trespass, and were therefore liable only for the stumpage value of the bark.

E. J. Banning, Asst. U. S. Atty.
Goodfellow & Eells, for defendants.

DE HAVEN, District Judge. This action was brought by the United States to recover damages for alleged trespass by the defendants upon certain public lands situate in township 5 south, range 2 east, Humboldt meridian. The complaint alleges that the defendants in the year 1900 went upon the lands described, and cut a large number of oak trees, and removed bark therefrom, of the value of $9,000, and converted the same to their own use. The alleged trespass is denied by the defendants. The controversy grows out of a question relating to the boundary of the lands described in the complaint, and its decision depends upon the true location of the south boundary of township 5 south, range 2 east, Humboldt meridian. The contention of the government is that this boundary should be located in accordance with an approved survey made by one Chandler on May 22, 1902, under the authority of the United States, for the purpose of re-establishing such boundary; while the defendants insist that the line where it strikes the western boundary of the township is 28 chains and 25 links north of the Chandler line. That part of the southern boundary of the township commencing at the Pacific Ocean and extending east to the quarter section corner of section 34 was surveyed by G. H. Perrin, a gov-

ernment surveyor, in the year 1876; and the other part of the line, beginning at the quarter section corner of section 34, and ending at the southeast corner of the township, was within a few months thereafter surveyed by J. R. Glover, a United States surveyor. There is no dispute as to the location of that portion of the Glover line which forms the southern boundary of sections 35 and 36, and the evidence in the case is sufficient to show that in running west from the southeast corner of the township his survey closed upon the quarter section corner of section 34 set by Perrin. In other words, the quarter section corner of section 34 was located in the same place by the Perrin and the Glover surveys. The evidence also shows that the line surveyed by Chandler in its courses and distances agrees with that run by Perrin as shown by the field notes of the latter's original survey, but none of the standard corners set by Perrin west of this quarter corner were found upon the line as re-established by Chandler. The contention of the defendants that the Chandler survey does not properly locate the south boundary of the township in which the land described is situate is based upon the following facts shown by the evidence: The township immediately south was sectionized by Perrin, the United States surveyor, at or about the same time he ran the southern boundary of township 5 south, range 2 east, Humboldt meridian, and as actually surveyed by him the northern tier of sections in the township south extended north of the Chandler line; section 1 about 38 chains, and section 4, upon the western side of the township, 28 chains and 25 links. The northern corners of these overlapping sections were properly marked as closing corners, and the defendants contend that they are upon the southern boundary of township 5 south, range 2 east, Humboldt meridian, as originally run by Perrin. No standard corners, however, are to be found upon this line, although one of the witnesses, a surveyor, testified that he found a stake properly marked as a standard corner at the point claimed by the defendants as the southeast corner of section 31; but it was shown by another of defendants' witnesses that this stake was not actually set by Perrin, but by the witness himself, about seven years after the original survey of the southern boundary of the township; and this witness further testified that it was marked by a government surveyor then engaged in sectionizing the township, and that he set it up by direction of that surveyor. This stake, then, is in no sense an original monument, and cannot be looked to as evidence of the original location of the standard corner of which it purports to be a memorial.

The case, then, as presented, is one in which no original monuments or standard corners west of the quarter corner of section 34 are to be found upon either one of the lines claimed as the southern boundary of the township, and in such a case, in the absence of other evidence showing its location, the law seems to be settled that the court must look to the field notes of the original survey for the purpose of determining where the line was originally run. Thus, in Nelson v. Hall, 1 McLean, 518, Fed. Cas. No. 10,107, it was held that, where the original corners and lines are established, they must control courses and distances, but courses and distances called for must govern where there are no established objects to control them; and in the case of

Hanson v. Township of Red Rock, 57 N. W. 14, the Supreme Court of South Dakota said:

"The rule that fixed monuments will control courses and distances only prevails when the boundaries are fixed and known, and unquestioned monuments exist; and where the boundaries are not fixed and known, and the location of the monuments themselves is uncertain, or left in doubt by the evidence, then courses and distances will be considered in fixing the boundaries."

Chief Justice Marshall, delivering the opinion of the Supreme Court in Chinoweth et al. v. Lessee of Haskell et al., 3 Pet. 92, 7 L. Ed. 614, after stating what the law requires to be done in making a survey of public land, proceeded to say:

"The description of the land thus made by a survey is transferred into the grant. It consists of the courses and distances run by the surveyor, and of the marked trees at the lines and corners, or other natural objects which ascertain the very land which was actually surveyed. The courses and distances are less certain and less permanent guides to the land which was actually surveyed and granted than natural and fixed objects on the ground; but they are guides to some extent, and, in the absence of all others, must govern us. If a grant be made which describes the land granted by course and distance only, or by natural objects not distinguishable from others of the same kind, course and distance, though not safe guides, are the only guides given us, and must be used."

The application of this rule to the case under consideration leads to the conclusion that the township line was properly re-established by the Chandler survey as claimed by the plaintiff. That survey, in its courses and distances, agrees with the field notes of Perrin's original survey, and is about two miles and three-quarters in length, while the line contended for by the defendants is 32 chains and 38 links longer; a difference which is too great to account for upon the supposition of inaccuracy of measurement or error of computation in running the original line, and can only be reasonably explained upon the assumption that the line surveyed by Perrin and that for which the defendants contend are not the same. In addition to this, the latter crosses the Mattole river twice, a fact of which no mention is made in the field notes of the original survey. It is highly improbable that, if the line actually run by Perrin crossed that river twice, such fact would not have been noted by him, because in surveying public lands the surveyor is required to make and return field notes showing "all rivers, creeks, and smaller streams of water which the line crosses." Zabriskie's Land Laws, p. 528.

The next question to be considered is that in relation to damages. The complaint alleges that the defendants cut down a large number of oak trees standing upon the land described, and removed 500 cords of tan bark therefrom, and converted the same to their own use. This allegation is sustained by the evidence, and the government claims that the trespass was willful, and that under the rule announced in Wooden-Ware Co. v. United States, 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230, and Benson Mining Co. v. Alta Mining Co., 145 U. S. 428, 12 Sup. Ct. 877, 36 L. Ed. 762, the defendants must respond in damages for the full value of the bark at San Francisco, where it was sold by them, without any deduction for the expense and risk incurred in removing it from the tree and shipping to the point where

it was sold. But I am of the opinion that the evidence is not sufficient to justify the court in finding that the trespass was willful and intentional, within the meaning of this rule. At the time of the alleged trespass there was a difference of opinion in the neighborhood as to the lines of the original survey. The standard corners west of the quarter section corner of section 34 were not to be found, and the government has deemed it necessary to re-establish the south boundary of the township west of that quarter corner, and three surveyors, who were witnesses upon the trial, had before the alleged trespass located the line in accordance with the contention of defendants. It is true that in doing so all of them but one proceeded upon the erroneous theory that the boundary of the township could be ascertained by starting from a well-recognized section corner of the township immediately south, and none of them thought it necessary to extend the Glover line west according to the field notes of the original survey, which, under the circumstances, was what ought to have been done. While they knew the method which was followed by these surveyors in making the surveys upon which they rely, there is no evidence showing that the defendants knew that such method was erroneous, or that they knew or believed that the true boundary of the township was where it is fixed by the Chandler survey. My conclusion therefore is that the evidence is not sufficient to justify the court in finding that the trespass was a willful one, and, as it was not, the government is only entitled to recover the value of the bark in place upon the tree; that is, its stumpage value. I regard the testimony of English, a witness for the government, as entitled to the most weight upon that point, and shall find in accordance therewith. His experience was such that he was better qualified that any other witness to testify upon the subject, and his estimate was evidently based upon the selling price of bark at the point of shipment, the cost of hauling, cutting, and peeling, and the allowance of a reasonable profit for carrying on the business of placing it upon the market. In the absence of direct evidence of the market price paid for bark upon the standing tree, these were all proper matters for consideration in fixing a reasonable stumpage value. The value fixed by him is $5 per cord.

It follows from what has been said, that the plaintiff is entitled to recover the sum of $2,500 as damages, with interest thereon from the 30th day of September, 1900, and costs.