**UNITED STATES of America, Plaintiff-Appellee,**

v.

**PEACHTREE NATIONAL DISTRIBU-TORS et al., Defendants-Appellants.**

**No. 71-2092.**

United States Court of Appeals, Fifth Circuit.

March 7, 1972

J. Mack Ausburn, San Antonio, Tex., Robert Eugene Smith, Towson, Md., for defendants-appellants; D. Freeman Hutton, Atlanta, Ga., of counsel.

Seagal V. Wheatley, U. S. Atty., Jeremiah Handy, Asst. U. S. Atty., San Antonio, Tex., Donald H. Feige, Atty., Dept. of Justice, Washington, D. C., William S. Sessions, U. S. Atty., William C. McCorriston, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

On March 20, 1971, an officer of the Texas Department of Public Safety, License and Weight Services, who was inspecting bills of lading and other required transport documents, stopped a large tractor-trailer on Interstate Highway No. 20 near Odessa, Texas. During a routine inspection he discovered that the trailer contained what he considered to be "obscene" books rather than oil well parts as shown on the bill of lading. The driver was then arrested for the purpose of filing state charges for license and shipping document violations. Enroute to the local courthouse the officer notified agents of the Federal Bureau of Investigation (FBI) of the possibly obscene nature of the cargo. When the vehicle reached the

courthouse FBI agents examined the trailer and found that it contained 190 cardboard cartons of books and magazines. The cartons were marked, "From Peachtree National Distributors, 240 Lucky Street Northwest, Atlanta, Georgia,—to Peachtree National Distributors, 240 Lucky Street Northwest, Atlanta, Georgia." The record indicates that the trip of the tractor-trailer originated in the state of California. The books and magazines contained pictures and textual descriptions of various sexual acts between persons of opposite sexes, of the same sex, and between humans and animals.[1] After determining the nature of the contents of the books and magazines, the agents removed ten copies of each of the books from the trailer and contacted the Assistant United States Attorney for instructions as to what to do with the trailer and the remainder of its contents. He advised them to retain custody of the trailer.

That afternoon the driver of the truck plead guilty to the highway violations, and was fined by the local Justice of the Peace.[2] The fine was paid and the driver and the tractor were released. The FBI retained custody of the trailer.

On March 29, 1971 the United States Attorney filed in the United States District Court a motion requesting the court to direct the United States Magistrate at Odessa, Texas to issue a search warrant for the search of the trailer and a motion for a temporary restraining order restraining the disposition, alteration, or mutilation of the contents of the trailer. The motions were entered on the criminal docket and the violation noted was "18:1462." The motion for a temporary restraining order alleged that upon the sworn affidavit of FBI agent, John Dailey, there existed probable cause to believe that 18 U.S.C.A. § 1462 had been violated. Section 1462 makes unlawful the transportation in interstate commerce of obscene materials.[3] The temporary restraining order was issued without notice on March 30, 1971 and restrained the owners of the trailer and its contents from disposing of or destroying the books and magazines for ten days or until after the hearing on the United States Attorney's motion for execution of a search warrant.

A hearing on the issuance of a search warrant was held on April 1, 1971. Counsel representing the alleged

1. The court stated that he had examined the publications involved and that an F.B.I. agent testified that in the books and magazines, "there were descriptions of oral copulation between male and female; female and female; intercourse between male and female; anal intercourse between male and female; intercourse between dog, chimpanzee, and pony with a female; and various natural and unnatural sex acts, reflected upon the printed pages which he read. The magazines (Government's Exhibit No. 6) reflected pictures throughout showing intercourse between male and female, oral copulation between male and female and female and female. The other five magazines with pictures of female and female, male and female, in the nude, lounging around bedrooms and other rooms in anticipation of performing various sexual acts with their private parts exposed."

2. The record discloses that the driver of the truck plead guilty and was fined for the following violations:
   (1) Displaying false bills of lading

   (2) No valid lease on file
   (3) No motor carrier authority to transport property for hire.

3. In pertinent part section 1462 provides:
   Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—
   (a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or

   .    .    .    .    .    .    .

   Whoever knowingly takes from such express company or other common carrier any matter or thing the carriage of which is herein made unlawful—
   Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.

owners [4] of the books and magazines, appellants, appeared at the hearing. Soon after the hearing began counsel for appellants orally moved to dismiss the proceedings. The essence of appellants' argument in support of their motion was that the seizure prior to an adversary hearing constituted an unconstitutional ex parte restraint in violation of the first amendment. The court denied the motion to dismiss and proceeded to hear testimony concerning the books and magazines from the Texas Public Safety officer and the FBI agent who had examined them. At the conclusion of the government's evidence, the Assistant United States Attorney invited appellants to present their witnesses. In response, appellants again moved to dismiss claiming that no expert testimony had been introduced. Appellants also asked for a continuance to furnish witnesses to show that the material was not obscene. The motions were denied. Appellants presented no witnesses and offered no evidence.

Thereafter, appellants' counsel asked if the court was going to enter a "disposition" of what the government could do with the material. The Assistant United States Attorney stated that the government planned to present the material to the first available Grand Jury which he believed would convene on April 13, 1971. The court then stated:

> All right the Court will then hold this as long as they ask the Court to hold it and that will be until the time it is presented to the Grand Jury.

In its Findings of Fact and Conclusions of Law the court found probable cause to believe that the materials involved were obscene and were "shipped in interstate commerce by common carrier, in violation of 18 U.S.C.A. § 1462." The court ordered that a search warrant be issued and executed, and that the contents of the trailer be seized for "the purpose of any future criminal proceeding." The government was ordered to "retain in its possession the trailer and its contents until final disposition of this case."

Appellants' notice of appeal indicates that this appeal is taken from the district court's order "granting issuance of a search warrant entered April 1, 1971."[5] Consideration of this case since oral argument raised for the first time a question as to this court's jurisdiction; whether an order authorizing the issuance and execution of a search warrant by a district court is a "final decision" under 28 U.S.C.A. § 1291.[6] Our research as well as that of the parties has disclosed no reported instance where an appeal has been taken from such an order. Upon careful consideration of the principles which sustain the finality rule and the decisions which have applied it, we conclude that the order is not a final one and therefore not appealable. We are not unmindful of appellants first amendment claims; we simply do not reach them.

The generally recognized policy supporting the rule limiting appellate review to "final decisions" is the need for sound judicial administration. Limiting review to final decrees saves the expense and delay of numerous appeals in the same suit and permits the whole case and every matter in controversy to be decided in a single appeal.[7] But the

---

4. The record indicates that the following corporations were consignees or owners of the materials: Peachtree News Company, Peachtree National Distributors, Rivergate News, All Star News, and Satellite News.

5. The notice of appeal states:
   Notice is hereby given that Peachtree National Distributors, Rivergate News, All Star News, Satellite News, and Peachtree News Company, defendants above named, appeal to the United States Court of Appeals for the Fifth Circuit from the order granting issuance of a search warrant entered in this action on April 1, 1971.

6. The order is not appealable under any of the exceptions of 28 U.S.C.A. § 1292.

7. See DiBella v. United States, 369 U.S. 121, 124–127, 82 S.Ct. 654, 7 L.Ed.2d 614, 617–619 (1962); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545, 69

rule is not inviolable. Congress has inscribed certain exceptions,[8] none of which is applicable here, and the judiciary has acted in very small measure to render "final" what might otherwise appear to be interlocutory decisions. The Supreme Court has deviated from the finality rule only where the adjudication appealed from was complete and independent of other litigation, or where the practical effect of the order would be irreparable if review were delayed until a subsequent appeal.[9] The Court has weighed the competing interests of the disruption and delay caused by piecemeal litigation against the "danger of denying justice by delay."[10] In cases involving criminal or potential criminal prosecutions the Court has focused particularly upon the independence vel non of the proceeding in question from the criminal prosecution itself.[11]

In DiBella v. United States,[12] the Supreme Court sought to clarify the application of the finality doctrine in criminal cases. The Court held that a motion to suppress, even before indictment, is not appealable. The Court reasoned that an order granting or denying a motion to suppress did not fall within any class of independent proceedings that it had otherwise recognized and that to take the step of recognition would seriously disrupt the criminal process. The motion was treated by the Court as merely a step in a criminal prosecution in which there was no need for an intermediate appeal.[13] Rights or interests which may have been violated may be protected at the subsequent trial and upon direct appeal. If no trial follows, an independent action for the return of property may be brought.[14]

*DiBella* spoke to both orders granting and denying motions to suppress. In 1968, Congress amended 18 U.S.C.A. § 3731 so as to make an order granting a motion to suppress or for the return of property appealable by the United States. The section was again amended

S.Ct. 1221, 93 L.Ed. 1528, 1536 (1949); Cobbledick v. United States, 309 U.S. 323, 324–328, 60 S.Ct. 540, 84 L.Ed. 783, 784–786; McLish v. Roff, 141 U.S. 661, 12 S.Ct. 118, 35 L.Ed. 893 (1891); Forgay v. Conrad, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848).

8. See 28 U.S.C.A. § 1292.

9. *See* Gillespie v. United States Steel Corp., 379 U.S. 148, 152–153, 85 S.Ct. 308, 13 L.Ed.2d 199, 203–204 (1964); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545–546, 69 S.Ct. 1221, 93 L.Ed. 1528, 1536 (1949); Swift & Co. Packers v. Compania Colombiana, 339 U. S. 684, 688–689, 70 S.Ct. 861, 94 L.Ed. 1206, 1210 (1950); Forgay v. Conrad, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848). *See also* United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85, 88–89 (1971).

10. Gillespie v. United States, 379 U.S. 148, 152–153, 85 S.Ct. 308, 311, 13 L.Ed. 2d 199, 203 (1964).

11. *See* DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); Carroll v. United States, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957); Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); Cogen v. United States, 278 U. S. 220, 49 S.Ct. 118, 73 L.Ed. 275 (1929);

Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918).

12. 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed. 614 (1962).

13. The Court stated:
We hold, accordingly, that the mere circumstance of a pre-indictment motion does not transmute the ensuing evidentiary ruling into an independent proceeding begetting finality even for purposes of appealability. . . . Orders granting or denying suppression in the wake of such proceedings are truly interlocutory, for the criminal trial is then fairly in train. When at the time of ruling there is outstanding a complaint, or a detention or release on bail following arrest, or an arraignment, information, or indictment—in each such case the order on a suppression motion must be treated as "but a step in the criminal case preliminary to the trial thereof. . . ."
*Id.* at 131, 82 S.Ct. at 660, 7 L.Ed.2d at 621 (citations omitted).

14. *Id.* at 131, 82 S.Ct. at 660, 7 L.Ed.2d at 621:
Only if the motion is solely for the return of property and is in no way tied to a criminal prosecution in esse against the movant can the proceedings be regarded as independent.

in January 1971 making such orders appealable if made before the defendant "has been put in jeopardy." The right of the United States to appeal in no way affects our decision here. We are not confronted with a motion to suppress or a motion for the return of property, nor is the United States the appellant. Furthermore, the fact that Congress has given the United States the right to appeal in such cases does not compel the courts to grant a similar right to defendants. If a motion to suppress is granted, the United States may well have no case left and hence no future opportunity for appellate review. Where the motion is denied the defendant can gain appellate review in an appeal from the final judgment on the merits. If there is no trial, a motion for the return of property may be made and an order denying such a motion is clearly appealable. We consider *DiBella* and its progeny in order to ascertain the circumstances in which a pre-indictment order in a criminal case has been deemed final.

Since *DiBella*, the courts have not been wholly consistent in deciding when a criminal proceeding begins and hence whether a pre-indictment order is independent and appealable. Some courts have held that until some formal action is begun against the accused there is no criminal prosecution and have thus permitted appeals from certain orders prior to any such action.[15] This court, in *United States v. Koenig*,[16] which was affirmed in *DiBella*, stated that it had

"drawn the line at a stage earlier than indictment." But in Koenig and in Zacarias v. United States,[17] an earlier decision of this court, the order to suppress followed a complaint and a hearing. In *Application of United States*,[18] this court's most recent "finality" decision, an appeal was taken from an order denying a pre-indictment motion to suppress intercepted wire communications and for the return of property. The motion was made prior to arrest as well as indictment. On the authority of *DiBella* the court held the order nonappealable since it was not independent of a criminal prosecution. Appellants argued that if they were not allowed to appeal they would have no remedy if they were not subsequently indicted. The court found it unnecessary to consider the argument since appellants had been indicted as of the time of appeal.

The Fourth Circuit avoided a similar confrontation in Parrish v. United States.[19] The court noted in dismissing the appeal that it knew that prosecutions did follow shortly after the order denying the motion to suppress and for the return of property. However, in a concurring opinion Judge Boreman argued that the court erred in considering events subsequent to the decision below in determining the appealability of the district court's judgment. According to Judge Boreman appellants could not come within the *DiBella* exception because they had joined a motion for the return of property with a motion to suppress, and had thus injected themselves

---

15. *See* United States v. Alexander, 428 F. 2d 1169 (8th Cir. 1970) ; Gottone v. United States, 345 F.2d 165 (10th Cir. 1965) ; cf. Coury v. United States, 426 F.2d 1354 (6th Cir. 1970) (order denying motion to suppress not appealable, but appeal permitted from denial of motion to return property).

16. 290 F.2d 166 (5th Cir. 1961), affd. sub nom, DiBella v. United States, 359 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962).

17. 261 F.2d 416 (5th Cir. 1958), cert. denied, 359 U.S. 935, 79 S.Ct. 650, 3 L.Ed. 2d 637 (1958).

18. 427 F.2d 1140 (5th Cir. 1970). In United States v. Grand Jury, 425 F.2d 327

(5th Cir. 1970) this court followed Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940) in holding that an order denying a motion to quash a subpoena duces tecum requiring petitioners to appear and produce documents before a grand jury was not appealable. The intent of *Cobbledick* was to prevent undue interruption of the grand jury process. Where a subpoena is involved, the individual may choose not to comply ; if contempt proceedings follow and his claims are rejected, appellate review is available. *See* United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85, 88–89 (1971).

19. 376 F.2d 601 (4th Cir. 1967).

into a step in the criminal prosecution. He apparently would have permitted an appeal from an order granting or denying a pre-indictment motion solely for the return of property.

The Third Circuit has largely followed the approach taken by Judge Boreman in *Parrish*. In Smith v. United States,[20] the court held that an order denying a preindictment motion to enjoin the government from presenting certain evidence before the grand jury and for the return of the property was not "final" and hence not appealable. The court concluded that the "essential character of the present petition and the surrounding circumstances show that it was not an independent proceeding but merely a step in the criminal prosecution.[21]

*Smith* and *Parrish* suggest that in the Third and Fourth Circuits the mere joinder of a motion for the return of property with another motion related to the criminal prosecution will not render the ensuing order appealable. The Ninth[22] and Tenth[23] Circuits have permitted appeals in similar cases but have emphasized the independence of the proceeding from a criminal prosecution. The Sixth Circuit has deemed the motions severable and denied an appeal from an order granting a motion to suppress but permitted an appeal from the portion of the order denying the motion for the return

of property.[24] Only the Eighth Circuit[25] has permitted an appeal from a preindictment motion to suppress. However, the court treated it as a motion for the return of property.

In the case before us the record indicates that no formal proceedings have been initiated against the appellants or against anyone connected with the seized property. But neither has any proceeding for the return of their property been initiated by appellants. We think it significant that only one circuit has permitted an appeal from an order which related solely to a pre-indictment motion to suppress. In other circuits where appeals have been permitted, the order reviewed included at least in part the denial of a request made by the appellant for the return of his property. We are asked to consider as "final" an order which was entered at the request of the United States Attorney who believed that a federal criminal statute had been violated. The district court's order indicates that the search warrant was ordered issued and executed because the court found probable cause to believe that the property to be seized was involved in a criminal violation.

Thus, even in the absence of formal criminal charges, the order from which this appeal was taken does not involve an independent proceeding, but instead

---

20. 377 F.2d 739 (3d Cir. 1967).

21. *Id.* at 742. In Meister v. United States, 379 F.2d 268 (3d Cir. 1968) the court looked to the "whole tenor" of the complaint to determine the true purpose of the plaintiff's request for the return of property and for an injunction to enjoin the use of the property in any criminal or civil proceeding. The court held that *DiBella* was controlling and dismissed the appeal.

22. Goodman v. United States, 369 F.2d 166 (9th Cir. 1966). In Howfield Inc. v. United States, 409 F.2d 694 (9th Cir. 1969); and Hill v. United States, 346 F.2d 175 (9th Cir. 1965) appellants property had in fact been returned before appeal leaving only a motion to suppress which the court held to be nonappealable.

23. Gottone v. United States, 345 F.2d 165 (10th Cir. 1965); cf. United States v. Hines, 419 F.2d 173 (10th Cir. 1965).

24. Coury v. United States, 426 F.2d 1354 (6th Cir. 1970).

25. United States v. Alexander, 428 F.2d 1169 (8th Cir. 1970). In *Alexander* appellants sought to suppress the use of certain films, magazines and booklets. The materials were alleged to be obscene under 18 U.S.C. § 1462. The court permitted the appeal from the order denying the motion and concluded that under *DiBella* the order was final. The court made no reference to appellants first amendment claims in deciding the jurisdictional question. In finding the proceeding to be independent of a criminal prosecution the court placed emphasis upon the absence of any formal indictment or complaint. As noted previously in the text we do not consider that factor to be controlling.

is a step in a criminal prosecution. Appellants have filed no written pleadings in the district court. They made only *an oral motion to dismiss* which was denied from the bench. Their assertion in their supplemental brief that their motion should have been considered as one for the return of property is unpersuasive. The issuance of a search warrant is a regular and vital step in a criminal prosecution. To permit an appeal each time a warrant is issued would cause "delays and disruptions [which would be] . . . inimical to the effective and fair administration of the criminal law."[26] In summary, the denial of an oral motion by appellants to dismiss the proceedings instituted by the government for the issuance of a search warrant and the issuance of the warrant by order of the court does not present to this court a final appealable judgment or order subject to review.

Accordingly, the appeal will be dismissed without prejudice to the rights of appellants to initiate such proceedings as they may consider appropriate for the protection of their alleged property rights.

Appeal dismissed.

---

26.  DiBella v. United States, 369 U.S. 121, 126, 82 S.Ct. 654, 658, 7 L.Ed.2d 614, 618 (1962).