**UNITED STATES of America, Plaintiff-Appellee,**

v.

**F. Lee BAILEY, Defendant-Appellant.**

No. 74–3370.

United States Court of Appeals, Fifth Circuit.

May 9, 1975.

Henry Gonzalez, Tampa, Fla., Roger E. Zuckerman, Washington, D. C., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Robert A. Leventhal, Asst. U. S. Atty., Orlando, Fla., Jay C. Johnson, U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before WISDOM and DYER, Circuit Judges, and KRAFT *, District Judge.

DYER, Circuit Judge:

This is an appeal under 28 U.S.C.A. § 1291[1] from the district court's denial of defendant Bailey's motion, based upon former jeopardy, to dismiss an indictment returned against him, and, alternatively, from the denial of his motion for

* Senior District Judge of the Eastern District of Pennsylvania, sitting by designation.

1. Section 1291 provides in pertinent part: "The courts of appeals shall have jurisdiction of ap-

a speedy trial. We dismiss for lack of appellate jurisdiction.

A brief statement of the posture of the case is necessary to focus on the narrow issue before us. Bailey, Bunting, and various other persons, both individual and corporate, were tried under a multicount indictment charging mail fraud and conspiracy to commit mail fraud. The trial began on September 17, 1973, the Government rested its case on January 30, 1974, and Bailey's motion for severance was granted on April 25, 1974. A mistrial as to the other defendants was declared on May 30, 1974. The Government insists upon a retrial.

The thrust of Bailey's former jeopardy argument is that Bunting was an essential defense witness in Bailey's behalf and that although he was willing, if severed, to testify for Bailey and waive his former jeopardy claim as to the severance alone, the court insisted upon the execution of a comprehensive waiver by Bunting requiring him to abandon all claims to alleged prior judicial error and misconduct. This Bunting refused to do. Although Bailey strongly objected to the nature of the waiver sought, he eventually moved for his own severance. Bailey insists that in these circumstances the court aborted his trial over his active objection or without his consent and that this constituted judicial overreaching, so as to cause jeopardy to attach to Bailey's severance. Alternatively, Bailey argues that the failure of the district court to set a retrial date for him for over eight months as a severed defendant has denied him his constitutional right to a speedy trial. The Government, of course, takes issue with these arguments.

The Government insists that neither the district court's order denying Bailey's motion to dismiss on former jeopardy grounds nor its order denying Bailey's alternative motion for a speedy trial are final appealable orders vesting this Court with jurisdiction. We agree and therefore do not reach the merits in either instance.

peals from all final decisions of the district courts of the United States . . .."

Although considerable water has gone over the dam since Judge Brown, now Chief Judge, as organ for the Court, wrote Gilmore v. United States, 5 Cir. 1959, 264 F.2d 44, it is not only very much alive and well but is determinative in this appeal, both on the former jeopardy and the speedy trial issue. Gilmore was tried twice. His first conviction was reversed. The jury at his second trial could not agree and a mistrial was therefore entered. The district court denied Gilmore's motion under F.R.Crim.P. 29(a) to enter judgment of acquittal on the ground that the evidence was insufficient to sustain conviction, and an appeal ensued. Without considering the merits, this Court dismissed the appeal because it was not taken from a final decision. In reaching this conclusion it was assumed *arguendo* that the district court could have entered a judgment of acquittal. Judge Brown was careful to point out, however, that in criminal cases there is finality only when the decision terminates the litigation on the merits and sentence has been imposed. Gilmore argued, as does Bailey here, that the order should have been considered final because it disposed finally of the claimed right not to be twice tried for the same offense. In support of this argument Gilmore emphasized that there was no corrective action available if a direct appeal could not be prosecuted since a second trial would have to take place, but a subsequent appeal would review not the errors in the second trial, but the denial of the motion for acquittal at the end of the first trial. It follows, said Gilmore, that the second trial would be superfluous, but "[w]orse, this has all been required and done in defiance of the constitutional rights of an accused, since 'The prohibition is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted is equally put in jeopardy at the first trial.'" *Id.* at 46 (footnote omitted). The Court responded:

But even if it were assumed that the second trial was forbidden as double jeopardy, that does not invest us with jurisdiction to vindicate such right. The Constitution does not guarantee an appeal. That comes wholly from the statute. There are many instances in which it is ultimately determined that constitutional rights have been violated. But the nature of the asserted right, i. e., a constitutional one, does not distinguish appellate review of any such question from the assertion of other rights, whether statutory or common law, or from a procedural rule. At least so long as a criminal case is pending, review of such matters, as for example, unlawful search and seizure, unlawful arrest, unlawful detention, unlawful indictment, unlawful confession, must await the trial and its outcome. This is so even though, at the end of that trial, or an appeal from the judgment of conviction, it is ultimately determined that the violation of the constitutional right compels an acquittal. When that is the outcome, the individual accused may claim in a very real sense to have been subjected to a trial that ought never to have taken place.

. . . . .

The Constitutional right, or the asserted violation of it, does not bridge the gap of appellate statutory jurisdiction. Nor, for like reasons, does it, through some reverse process, expand the term "final decision" into something which, contrary to a long-settled Congressional policy, amounts in actuality to piecemeal review. (footnote omitted). *Id.* at 46–47.

The principles explicated in *Gilmore* are strongly rooted.

Finality as a condition of review is an historic characteristic of federal appellate procedure. It was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all. . . . The correctness of the trial court's rejection even of a constitutional claim made by the accused in the process of prosecution must await his conviction before its reconsideration by an appel-

late tribunal. Cobbledick v. United States, 1940, 309 U.S. 323, 324–26, 60 S.Ct. 540, 541, 84 L.Ed. 783.

Underscoring the need for finality, the Court in Parr v. United States, 1956, 351 U.S. 513, 518, 76 S.Ct. 912, 916, 100 L.Ed. 1377 pointed out that

> [i]n general, a "judgment" or "decision" is final for the purpose of appeal only "when it terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined."

It further noted that "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." *Id.* Parr had challenged the Government's right to dismiss an indictment returned against him in the Corpus Christi division of the Southern District of Texas after it had obtained a new indictment against him in the Austin division of the Western District of Texas for the same offenses. Holding that Parr could have the Corpus Christi dismissal reviewed upon an appeal from a judgment of conviction under the Austin indictment, the Court dismissed his appeal in conformity with the long standing statutory policy against piecemeal appeals.

Bailey, relying on Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, and United States v. Lansdown, 4 Cir. 1972, 460 F.2d 164, strenuously insists that in the circumstances of this case, the district court's denial of his motion to dismiss the indictment was a final appealable order. He distinguishes *Gilmore* by arguing that the result would have been different if, were the jeopardy claim not reached, the defendant on remand would have to stand trial for nine months rather than stand trial for two weeks or two months. Furthermore, he seems to infer that since the *Gilmore* opinion failed to discuss or consider *Cohen* and the kind of analysis that it mandates, the conclusion reached by us in *Gilmore* was wrong.

We are unpersuaded that the estimated time that it may take to again try Bailey, or, by implication, the prejudice he may have suffered, is determinative of the finality *vel non* of the order denying a motion to dismiss the indictment. If this nebulous standard were adopted, how much retrial time would be too much time? How much weight would we have to give to the representation made by the Government on oral argument in this case that it has submitted to the district court an offer to dismiss a number of counts in the indictment, substantially cut its witness list, and reduced its case so that it may be tried within five to six weeks? Bailey's novel theory is unprecedented and unworkable.

The second prong of Bailey's argument, that *Gilmore* failed to take cognizance of or give expression to the *Cohen* exception of finality, is not only inaccurate, but is precisely contrary to the fact that *Gilmore* relied upon and consideration was indeed given to, the *Cohen* principle.[2]

Turning from his criticism of *Gilmore*, Bailey strongly relies on *Lansdown*.[3] The court there found that there was no manifest necessity to declare a mistrial or discharge the jury in the face of the jury's desire to continue its deliberations for an additional ten minutes. The court reached the merits on appeal from the denial of a motion to dismiss the indictment on the grounds of former jeopardy. Recognizing that the denial of a motion to dismiss an indictment is not a final order, but an unappealable interlocutory order, it concluded that it nevertheless had jurisdiction to entertain the appeal under the exception to the final judgment rule in *Cohen*. The Supreme Court in *Cohen* decided that an appeal under § 1291 could be taken from an order of the district court denying a corporation's motion that the plaintiff in a stockholder's derivative suit be required to give security under a state statute. The Court said:

---

**2.** See Gilmore v. United States, *supra* at 45 n. 3, in which the *Cohen* principle is set forth as explicated in United States v. Cefaratti, 1952, 91 U.S.App.D.C. 297, 202 F.2d 13.

**3.** Without supporting reasons the Third Circuit followed *Lansdown* in United States ex rel. Russo v. Superior Court of N. J., 3 Cir. 1973, 483 F.2d 7.

Nor does the statute permit appeals, even from fully consummated decisions, where they are but steps towards final judgment in which they will merge. The purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results. But this order of the District Court did not make any step toward final disposition of the merits of the case and will not be merged in final judgment. When that time comes, it will be too late effectively to review the present order, and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably. We conclude that the matters embraced in the decision appealed from are not of such an interlocutory nature as to affect, or to be affected by, decision of the merits of this case.

This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. Cohen v. Beneficial Industrial Loan Corp., *supra* at 546, 69 S.Ct. at 1225.

Applying the *Cohen* rule, the *Lansdown* court found that the defendant's Fifth Amendment right was separable from the main cause of action; that since it was a constitutional right it was too important to be denied review; and finally, if the review was not granted, the right to be free from being twice forced to stand trial for the same offense "will be irreparably lost." The court went on to say:

Even if an appellate court reverses the conviction in a second trial on the grounds of double jeopardy, a defendant has still not been afforded the full protection of the fifth amendment since he has been subjected to the embarrassment, expense, anxiety and insecurity involved in the second trial. If an individual is to be provided the full protection of the double jeopardy clause, a final determination of whether jeopardy has attached to the previous trial must, where possible, be determined prior to any retrial. United States v. Lansdown, *supra* at 171.

The court was nevertheless careful to point out that its holding is "limited to the narrow facts and circumstances of this case"; that its decision dealt "only with mistrials instigated by the court and opposed by the defendant"; and that it did not "apply to those cases where the mistrial is declared at the request of the defendant since in those cases the defendant has waived any claim of double jeopardy." *Id.* at 171 and 172, nn. 8 and 10.

Even though the *Lansdown* court narrowly circumscribed the exception it created to the finality rule, which we think sufficiently distinguishes it from this case, we nevertheless disagree with both the rationale and the conclusion reached. Neither in *Gilmore, Lansdown,* nor the case *sub judice,* are there the compelling reasons for finality that were delineated in *Cohen.* Absent such reasons, interlocutory orders, whether based on statutory or constitutional grounds, are unappealable. *See, e. g.,* Di Bellas v. United States, 1962, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614; United States v. Peachtree National Distributors, 5 Cir. 1972, 456 F.2d 442; Application of the United States, 5 Cir. 1970, 427 F.2d 1140. While the right against former jeopardy may be violated by a retrial, the right is neither lost nor lacking in remedy. If the hazards, expense and inconvenience of retrial are the consequences of the violation of the right, this case is no more distinguishable on finality grounds than a violation of any other constitutional right which results in the defendant's being subjected to the ordeal of a trial and conviction on the road to reversal. *See, e. g.,* United States v. Doucet, 5 Cir. 1972, 461 F.2d 1095. We are of the firm conviction that the principles explicated in *Gilmore* are correct and are fundamental to jurisdiction. Thus we find untenable Bailey's contention that, even if not final, the

838

denials of his motion to dismiss the indictment and of his speedy trial motion falls within the exceptions to the rule of finality as found in *Cohen*. The order was there found appealable because it related to matters collateral to the main action which would not be subject to effective review as part of the final judgment. Unlike the *Cohen* order, the order denying the motion to dismiss the indictment in the instant case will be merged in the final judgment, and lack of review on the merits of the former jeopardy and speedy trial claims now will not "deny effective review of a claim fairly severable from the context of a larger litigious process." Swift and Co. Packers v. Compania Columbiana del Caribe, 339 U.S. 684, 689, 70 S.Ct. 861, 865, 94 L.Ed. 1206. While Bailey will have to hazard another trial before he can obtain a review on the merits of whether jeopardy attached when his motion to sever was granted on the first trial, and while if he prevails on this issue he "may claim in a very real sense to have been subjected to a trial that ought never to have taken place," *Gilmore, supra* at 47, "bearing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship." *Cobbledick, supra* at 325.

Appeal dismissed.