UNITED STATES of America, Appellee,

v.

Alexander J. BARKET, Appellant.

Alexander J. BARKET, Petitioner,

v.

The Honorable John W. OLIVER, United States District Judge, and United States of America, Respondents.

Nos. 75–1568, 75–1569.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1975.

Decided Dec. 9, 1975.

Rehearing and Rehearing En Banc Denied Feb. 9, 1976.

Rehearing Denied in No. 1568 Feb. 13, 1976.

Stephenson, Circuit Judge, filed a concurring and dissenting opinion.

Thomas C. Walsh, St. Louis, Mo., for appellant.

Anthony Nugent, U. S. Asst. Atty., Kansas City, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, LAY and STEPHENSON, Circuit Judges.

MATTHES, Senior Circuit Judge.

Alexander J. Barket has appealed from the order of the district court * denying his motion to dismiss Count I of a two-count indictment (our Appeal No. 75–1568). Alternatively, Barket filed a petition for writ of mandamus in this court (No. 75–1569) to compel the district court to dismiss Count I and discharge appellant. The appeal and petition for mandamus have been consolidated for briefing, argument, and opinion.

Count I of the indictment charged that appellant, an officer of Civic Plaza National Bank, Kansas City, Missouri, consented to the expenditure of the bank's moneys in connection with the 1968 presidential election, in violation of 18 U.S.C. § 610.[1]

Before proceeding to an examination of the merits of the issues presented, a resume of the history of this case in the district court will serve to explain why this litigation is before us.

The two-count indictment was filed on May 9, 1974.[2] Count I charged that ap-

---

* The Honorable John W. Oliver.

1. In pertinent part § 610 provides:

It is unlawful for any national bank, * * * to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, * * *

[A]nd every officer or director of any corporation, or officer of any labor organization, who consents to any contribution or expenditure by the corporation or labor organization, as the case may be, * * * shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if the violation was willful, shall be fined not more than $10,000 or imprisoned not more than two years, or both.

2. The original indictment in this action was filed on October 11, 1973. The first two counts charged appellant and the bank with the violations alleged here. The third count charged appellant with violating 18 U.S.C. § 1005. This indictment was dismissed on ap-

pellant violated 18 U.S.C. § 610 by consenting to the contribution of $7,500 of Civic Plaza's money in connection with the 1968 election for presidential and vice presidential electors. Count II charged that, in violation of 18 U.S.C. § 656, appellant knowingly and without authorization misapplied $9,144 of the bank's funds by paying the money to Rudolph Zatezalo, for the purpose of making an unlawful political contribution.[3]

Both counts were based on the same transactions: an alleged payment of $9,144 from the bank to Zatezalo, as a bonus salary, and a contribution by Zatezalo of $7,500 to the presidential campaign of then Vice President Hubert Humphrey.[4] The government's theory is that appellant approved this payment to Zatezalo, without proper authorization, and so violated both § 656, by misapplying the bank's funds, and § 610 by consenting to an expenditure of bank funds for a presidential election.

At a conference on January 28, 1975, the court ordered that the two counts be tried separately. It is unclear at whose instance this order was made.[5]

In any event, after waiver of a jury trial, the case proceeded on Count II alone, the § 656 misapplication charge. At the close of the evidence, the trial judge granted appellant's motion for judgment of acquittal. In granting the motion, he discussed at length the strength of the government's evidence. Particularly, he said:

> The greatest difficulty, it seems to me, is proof and evidence to support any sort of finding that whatever the defendant may have done, he did for the purpose as alleged by the government "to injure and defraud his bank" '
> * * *.

> It is my judgment, and I find, that there was an equal failure of proof on the part of the government that the purpose of the defendant's action was the making of an "illegal" political contribution.

The court then entered a "not guilty" verdict.

Count I of the indictment, the § 610 charge, remained pending. Thereafter, appellant moved to dismiss this count on several grounds. He asserted first that to try him on Count I would violate the fifth amendment's proscription of double jeopardy, because the offense charged in Count I is identical to the offense charged in Count II. In his motion to dismiss appellant relied in part at least on *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) to support this double jeopardy claim.[6] He asserted also that Count I fails to state an offense, and that § 610 is unconstitutional.

The court denied appellant's motion to dismiss Count I and this appeal followed.

---

pellant's motion on November 23, 1973. The present indictment was subsequently filed, naming appellant alone as defendant.

A separate information against the bank was also filed, but was dismissed by the trial court.

3. In pertinent part § 656 provides:

> Whoever, being an officer, director, .* * or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, * * * embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both * * *.

4. The difference between the amount purportedly paid to Zatezalo ($9,144) and the amount of the alleged contribution ($7,500) apparently represented Zatezalo's increased income tax liability resulting from his receipt of the "bonus."

5. The court's memorandum of this conference reads: "The government elected to try the § 656 counts in the two cases." The government asserts that the court compelled it to sever the counts for trial, on motion of appellant.

6. On appeal, appellant has receded from any claim that *Ashe v. Swenson* involves pure double jeopardy. He recognizes that *Ashe* dealt with collateral estoppel, and incorporated that doctrine into the double jeopardy clause of the fifth amendment.

In denying the motion, the judge filed a written memorandum and order in which he stated *inter alia*:

In connection with the Section 656 charge contained in Count II of the indictment, the government was obligated to establish beyond reasonable doubt that the defendant, with intent to injure and defraud the bank of which he was an officer and director, willfully and knowingly misapplied $9,144.00 for the purpose of making an unlawful political contribution. The Section 610 charge alleged in Count I does not require proof of any factual data essential to a Section 656 conviction under Count II. The charge in Count I requires that the government prove beyond reasonable doubt that the defendant "consented" to a $7,500 contribution made by the bank in violation of Section 610. That is an entirely different charge than Count II which alleged that the defendant had made an unidentified unlawful political contribution with money which he had converted from funds formerly owned by the bank.

## I.

Initially, we consider the question whether the order complained of is a "final decision" appealable under 28 U.S.C. § 1291.

The parties disagree on this vital question. The appellant relies on *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and cases cited below from four courts of appeals in support of his contention that even though the order denying the motion to dismiss is collateral in nature, it should be treated as final and appealable. The government argues that the order does not fall within the ambit of the *Cohen* doctrine and submits that the four cases relied upon by the appellant are distinguishable. The government argues also that the double jeopardy and collateral estoppel issues can be determined after another trial and entry of a final judgment under 28 U.S.C. § 1291.

■ Ordinarily, absent compelling reasons, an interlocutory order, such as an order denying a motion to dismiss an indictment, is non-appealable. *Cohen v. Beneficial Industrial Loan Corp., supra*; *Snodgrass v. United States*, 326 F.2d 409 (8th Cir. 1964). However, where, as here, the appellant in good faith contends that another trial is barred by former jeopardy, this general rule does not apply. Rather, denial of the motion to dismiss is deemed appealable as a collateral order, within the doctrine of *Cohen v. Beneficial Industrial Loan Corp., supra*. *United States v. DeSilvio*, 520 F.2d 247 (3d Cir. 1975); *United States v. Beckerman*, 516 F.2d 905 (2d Cir. 1975); *United States v. Lansdown*, 460 F.2d 164 (4th Cir. 1972); *see also Thomas v. Beasley*, 491 F.2d 507 (6th Cir. 1974); *contra, United States v. Bailey*, 512 F.2d 833 (5th Cir. 1975).[7]

■ The denial of the motion to dismiss in this case has all the characteristics of a collateral order. These characteristics are enumerated by Professor Moore:

(1) [T]he order must be a final determination of a claim of right "separable from, and collateral to," rights asserted in the action;

(2) it must be "too important to be denied review," in the sense that it "presents a serious and unsettled question"; and

(3) its review cannot, in the nature of the question that it presents, await final judgment because "when that time comes, it will be too late effectively to review the * * * order and rights conferred * * * will have been lost, probably irreparably."

---

**7.** We agree with the government that the factual contexts of the cases relied upon by appellant are dissimilar from the circumstances here. But central to all of the cases was a double jeopardy plea and, more importantly, whether that issue could be tested and determined on an appeal from an interlocutory judgment such as an appeal from a denial of a motion to dismiss.

9 J. Moore, Federal Practice ¶ 110.10, *quoted in Roach v. Churchman*, 457 F.2d 1101 (8th Cir. 1972).

■ The order denying the motion to dismiss here is the trial court's final determination of appellant's double jeopardy claim. It is separable from the merits of the case. *See United States v. Lansdown, supra*, 460 F.2d at 171. As a question of constitutional right, it is too important to be denied review. *Id.*

■ Most importantly, review of the double jeopardy claim cannot await final judgment. The double jeopardy prohibition is meant to spare a once-jeopardized defendant not only a subsequent conviction, but also a subsequent trial. It is designed to prevent the government from "subjecting [a defendant] to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); *Accord United States v. Lansdown, supra*, 460 F.2d at 171; *United States v. Brown*, 481 F.2d 1035, 1041 (8th Cir. 1973); *see also Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

If this appeal is not heard now, appellant will lose his claimed right to be free from a second trial.[8] Review thus cannot await final judgment. We hold that the order is appealable, and in so holding, we emphasize that our conclusion is limited to double jeopardy cases.

Also, the other grounds for dismissal of the indictment advanced by appellant (failure to charge an offense and the unconstitutionality of § 610) can be heard, if necessary, on appeal from final judgment in the event there is another trial and conviction. Accordingly, we do not consider them now. We limit our consideration to appellant's double jeopardy and collateral estoppel claims.

And because we find the order appealable, we need not consider whether mandamus is appropriate.

## II.

Appellant in fact makes two separate double jeopardy arguments. First, he contends that the § 610 violation charged in Count I and the § 656 violation charged in Count II are the "same offense," so that his acquittal for the latter bars prosecution for the former. Secondly, he argues that the second prosecution is barred by the "collateral estoppel" rule of *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). We consider each argument in turn.

■ Two statutes charge the same offense, for double jeopardy purposes, if the violation of each statute is proved by the same evidence. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 40, 76 L.Ed. 520 (1932); *Kistner v. United States*, 332 F.2d 978, 980 (8th Cir. 1964).

■ Conviction of a bank officer under 18 U.S.C. § 656 requires proof that the officer wilfully misapplied funds for the benefit of himself or another person, for the purpose of defrauding or injuring the bank. This purpose to defraud or injure the bank is an important element of a § 656 offense. *See United States v. Giordano*, 489 F.2d 327, 330 (2d Cir. 1973).

Conviction under § 610, in contrast, requires proof that the defendant consented to the contribution or expenditure of the bank's funds in connection with an election. No purpose to defraud or injure the bank is required.

■ There is a fundamental difference in purpose between the two statutes. The misapplication statute, § 656, is meant to protect the funds of banks with a federal relationship. "[C]ourts have generally held that the gist of the offense of willful misapplication is the conversion of funds of a federally in-

8. It makes no difference for appealability purposes, of course, whether appellant wins or loses on the merits. *See, e.g., United States v.*

*DeSilvio, supra* (finding that order similar to the one here is appealable, and holding for appellee on merits).

sured bank by one connected in some capacity with the bank either to his own use or to the use of a third person, with the intent to injure or defraud the bank." *United States v. Wilson,* 500 F.2d 715, 720 (5th Cir. 1974). The political contribution statute, § 610, in contrast, has for one of its purposes the protection of the electoral process from the influence of corporate and union funds. *See United States v. Auto Workers,* 352 U.S. 567, 77 S.Ct. 529, 1 L.Ed.2d 563 (1952).

■ Because of these different purposes, the two offenses contain different elements. As noted, § 656 requires a purpose to injure or defraud the bank; § 610 requires consent to a political contribution. Violations of the two statutes must be proved by different evidence. Therefore, the two counts here charge different offenses.[9] *See United States v. Blockburger, supra.*

Appellant in reality is arguing not that the offenses are identical, but that the § 610 violation is a lesser included offense of the § 656 violation.

■ One offense is a lesser included offense of another only if, in order to commit the greater offense, it is necessary to commit the lesser. *See United States v. Eisenberg,* 469 F.2d 156, 162 (8th Cir. 1972), *cert. denied,* 410 U.S. 992, 93 S.Ct. 1515, 36 L.Ed.2d 190 (1973). Manifestly, there are many ways to misapply funds, in violation of § 656, without consenting to a political contribution in violation of § 610. It is thus possible to commit the greater offense without committing the lesser, and the lesser included offense doctrine is inapplicable.

The two counts, then, do not charge the same offense. Nor is the offense charged in Count I a lesser included offense of the offense charged in Count II. This aspect of the double jeopardy prohibition is thus inapplicable, and appellant's point is without merit.

### III.

■ Appellant's second argument is based, not on pure double jeopardy, but on the "collateral estoppel" principle of *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The Supreme Court there held that, where an issue of ultimate fact has been determined by a final judgment in a criminal case, to relitigate the issue in a subsequent trial for a different offense violates the double jeopardy prohibition. Appellant contends that the trial judge, in commenting on the weight of the government's evidence, decided certain factual issues in appellant's favor which would be crucial to a prosecution on Count I.

The statements referred to were made from the bench at the close of the evidence at the trial on Count II.[10] They lack the clarity which could be found in written findings of fact. It is therefore difficult to determine what factual issues the trial judge intended to resolve by the statements.

As shown above, in ruling on the motion to dismiss which is now before us, the trial judge found that his disposition of Count II had not foreclosed any issues essential to the trial of Count I. We are not bound by this finding. Rather, we must make our own examination of the record, to see what factual issues were resolved in connection with the motion for judgment of acquittal, and which of these issues, if any, would be material to a § 610 prosecution. We note first that the one issue on which the trial court

---

9. Appellant makes much of the government's assertion that it will introduce at trial on Count I the same evidence used at the trial of Count II. The question before us is not, however, what evidence is to be used at trial. Rather, the question is what evidence is required to convict under the two statutes.

10. Appellant did not request formal findings of fact, and none were made. *See* Fed.R.Crim.P.

23(c). The "findings" referred to here were *oral comments made in the disposition of the* motion for judgment of acquittal. Because none forecloses an issue essential to Count I, it is not necessary to consider whether "findings" of this kind can bring the *Ashe v. Swenson* rule into play.

unquestionably found a failure of proof is not essential to a § 610 proceeding. The court ruled that the government had failed to prove that appellant acted for the purpose of injuring and defrauding his bank. As observed, this is not an element of the § 610 offense, so that this finding does not preclude conviction under that statute.

Appellant relies on certain other "findings" of the trial court to support his *Ashe v. Swenson* claim. He points, first, to the trial court's assertion that the evidence did not support a finding that appellant acted "wilfully." It is not at all clear what the trial judge meant by his use of the word "wilful." He might have meant to say that appellant did not act for the specific purpose of violating § 656, or to assert again that appellant did not act to injure the bank. If so, this "finding" of lack of wilfulness is irrelevant to the § 610 charge.

Similarly, the court found that "there was an equal failure of proof on the part of the government that the purpose of the defendant's action was the making of an 'illegal' political contribution." This comment was made in the midst of a discussion of the requirement that a § 656 misapplication necessarily involve a conversion. The court emphasized the word "illegal." It might well have meant to say, not that the government failed to prove the political contribution, but that it failed to prove that the contribution resulted from an unauthorized, i. e., "illegal," conversion of bank funds. Conviction under § 610 does not require that the contribution of bank funds be unauthorized. If the sentence quoted is given this meaning, prosecution under § 610 remains possible.

Appellant asserts, finally, that the court found that the government failed to prove that appellant was "tied" to the contribution in question. The record shows that the court did not in fact so find. Although it indicated that there was "some difficulty" in tying the alleged contribution to appellant in light of certain documentary evidence, it did not expressly rule on the question. In the absence of a clearer declaration by the trial judge, we cannot say that the issue of appellant's participation in the contribution was resolved.

In any *Ashe v. Swenson* case, the burden is on the defendant to show that the verdict or the findings of the court in the prior case necessarily foreclosed an issue essential to the subsequent prosecution. *See United States v. Gugliaro,* 501 F.2d 68, 70 (2d Cir. 1974). Appellant has not sustained this burden here. None of the statements referred to by appellant unambiguously forecloses issues essential to Count I.

Appellant has thus not shown that the prosecution of Count I is barred by the trial court's disposition of Count II, either under traditional double jeopardy standards or under the rule of *Ashe v. Swenson.* The trial court therefore did not err in denying the motion to dismiss.

The government has indicated that it will present at the trial of Count I the same evidence it produced at the trial of Count II. We assume that the trial court will provide both parties the opportunity to present additional evidence if they choose to do so.

The petition for writ of mandamus is denied. The order of the district court denying appellant's motion to dismiss is affirmed.

STEPHENSON, Circuit Judge (concurring and dissenting).

Assuming arguendo that the order of the district court denying appellant's motion to dismiss Count I is an appealable order I concur with parts II and III of the majority opinion.

However, I respectfully dissent from part I of the majority opinion because it is my view that the order denying dismissal of Count I is not a final decision appealable under 28 U.S.C. § 1291. I am in accord with the views expressed in *United States v. Bailey,* 512 F.2d 833 (5th Cir. 1975). *Cf. United States v. Nixon,* 418 U.S. 683, 690–92, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

I would deny the petition for writ of mandamus for the reason that exception-

al circumstances justifying invocation of this extraordinary remedy do not exist. *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).