BRIGHT, Circuit Judge,
dissenting.
I concur with the majority’s decision to remand for resentencing, but write separately to express my strong disagreement with the majority’s conclusion that the evidence was sufficient to support John Markert’s conviction. Markert’s actions did not deprive Pinehurst Bank of any possession, control, or use of its funds. Therefore, I respectfully dissent. Because Markert’s crime is unproved, I would reverse his conviction and release him from prison.
I will briefly summarize the facts. George Wintz, through companies he controlled, engaged in a check-kiting scheme involving Pinehurst Bank (the Bank) and North Star Bank, rapidly transferring funds between the two banks to artificially inflate his account balances. By the time the defendant Markert was notified of this activity, approximately $1.9 million hung in the balance. Markert sought a way to cover Wintz’s impending overdraft. The Bank had previously reached its lending limit to Wintz and his companies, meaning it could not lend to any of them directly. In an attempt to save the Bank, Markert arranged five “nominee” loans to cover the $1.9 million overdraft. Five individuals agreed to take out loans from the Bank, but to allow the loan proceeds to be immediately transferred to Wintz through his company accounts.
In January 2010, an audit of the Bank revealed that Markert had issued the nominee loans to cover the overdraft resulting from Wintz’s check-kiting scheme. The Government indicted Markert on various counts, including one count of bank fraud in violation of 18 U.S.C. § 1344 and five counts of willful misapplication of bank funds by a bank officer in violation of 18 U.S.C. § 656. A jury convicted him of the *934 five counts of misapplication of funds, but acquitted him of bank fraud. The district court sentenced Markert to 42 months in prison. He appeals.
Markert’s conviction should not stand.
The relevant law is as follows. In order to prove a crime of misapplication of bank funds under 18 U.S.C. § 656, the Government was required to prove that Markert converted the funds of a federally insured bank for the benefit of himself or another person, with the intent to injure or defraud the bank. United States v. Barket, 530 F.2d 181, 186-87 (8th Cir.1975), cert. denied, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976); see United States v. Beran, 546 F.2d 1316, 1320 (8th Cir.1976) (“Conversion of bank funds for personal use, or for the use of another individual or corporation, is encompassed within the definition of criminal misapplication.”), cert. denied, 430 U.S. 916, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977). In order to establish the conversion on which misapplication depends, the Government must prove either “actual loss” or “that the defendant at least temporarily deprive[d] the bank of the possession, control or use of its funds.” United States v. Duncan, 598 F.2d 839, 858 (4th Cir.1979), cert. denied, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979); see Dow v. United States, 82 F. 904, 906 (8th Cir.1897) (“To complete a misapplication of the funds of the bank, it was necessary that some portion thereof should be withdrawn from the possession or control of the bank, or a conversion in some form should be made thereof, so that the bank would be deprived of the benefit thereof.”). As clearly stated, there must be a conversion.
Here, the Government did not prove that Markert converted funds. The Bank suffered no actual loss because it retained all the funds from the nominee loans, nor did the Bank ever lose control of the funds at issue. On March 9, 2009, Markert distributed three of the loans into the nominee borrowers’ checking accounts, then to Wintz’s Cue Properties account, and finally to Wintz’s McCallum Transfer account. The other two nominee loans were transferred directly into the Cue Properties account and then to the McCallum Transfer account. The chain of transactions was only a bookkeeping matter and was recorded in a matter of seconds. If, as here, “control” over the funds is so short in time that one cannot practically exercise any control at all, it follows that the bank is not deprived of the “possession, control or use of its funds” that is required for a conversion.
Cognizant that the nominee borrowers lacked any control over the funds, the majority now supports the conviction with a theory that was never advanced by the Government — that Wintz, not the nominee borrowers, had temporary control over the proceeds when they were credited to his McCallum Transfer account. This control, the majority contends, is sufficient to establish a conversion. However, in its brief, the Government is crystal clear in its view that Markert converted the funds at the time they were distributed to the nominees, not to Wintz. In its brief, the Government states:
Here, conversion of bank funds within the meaning of this Court’s precedents was established. Markert caused the Bank to commit its capital, and disburse from its general funds $1.9 million in new loans. He caused the loan proceeds to be disbursed to Wintz’s nominees, in violation of the Bank’s policy and state lending requirements. Conversion occurred at the time of disbursement, at which point the nominees, not the Bank, had possession and control of the funds.
(Gov. Br. at 35-36.) (emphasis added). Later in its brief, the Government again insists that Markert converted the funds *935 because “the nominee borrowers gained control over the loan proceeds as soon as they received them.” (Gov. Br. at 40.) I take the majority’s shift in focus to whether Wintz exercised control over the funds as a tacit recognition that the Government has not and cannot prove its theory of conversion to the nominee borrowers to support Markert’s conviction.
Ironically, the majority’s new theory fares no better than the Government’s theory. The majority now contends that a conversion occurred when Wintz gained control of the $1.9 million in loan proceeds at the time they were distributed into his McCallum Transfer account. I disagree. At the time the proceeds were distributed in Wintz’s McCallum Transfer account, there was approximately $1.9 million of overdraft “in float” due to Wintz’s check-kiting scheme. But as the majority observes, Wintz’s preexisting contractual relations gave the Bank “immediate right” to possession, control, and use of the funds at the time they were deposited in the McCallum Transfer account, which is held by Pinehurst Bank. The Government’s own financial analyst agreed that the proceeds from the nominee loans “came into [the] account and zeroed it.” (Trial Tr. 40.) Given these circumstances, Wintz could have never practically exercised control over any funds given that the deposit of funds in his account resulted in a zero balance. Thus, no balance, no access, and no conversion occurred.
As final notes, I would observe that the majority does not cite to a single case that mirrors the facts we have before us. Moreover, there was no evidence that Markert actually injured the Bank. The evidence is to the contrary, and the jury’s acquittal of Markert on one count of bank fraud (Count 1) should negate any support for a determination that the bookkeeping entries directed by Markert in any way defrauded the Bank.
For the reasons stated, I would reverse Markert’s conviction for misapplication of bank funds under 18 U.S.C. § 656 because the evidence was insufficient to establish a conversion. I would be remiss if I did not also express my view that, on remand for resentencing, the district court should acknowledge the true degree of actual loss in this case: zero. There was no loss to the Bank, and Markert did not enrich himself during the processing and distribution of the nominee loans. Simply put, we have enough people in jail for too long a time.[6] Markert should no longer be one of them.

. In his remarks to the American Bar Association’s House of Delegates on August 12, 2013, Attorney General Eric Holder emphasized "that too many Americans go to too many prisons for far too long, and for no truly good law enforcement reason.” Eric Holder, Attorney General of the United States, United States Department of Justice, Remarks at the Annual Meeting of the American Bar Association’s House of Delegates (Aug. 12, 2013), available at http://www.justice.gov/iso/opa/a^ speeches/2013/ag-speech-l30812.html. Attorney General Holder explained that widespread incarceration is unsustainable because it “imposes a significant economic burden' — • totaling $80 billion in 2010 alone — and it comes with human and moral costs that are impossible to calculate.” Id. Given these substantial economic and moral costs, I agree with the Attorney General that we must ensure that our criminal justice system is "targeting the most serious offenses” and "prosecuting the most dangerous criminals.” Id. Even if I were to assume that Markert was rightly convicted, his case does not fall into either category.