**UNITED STATES of America**

v.

**Anthony J. COSTA and Velvet J. Barnes.**

**Crim. No. 213-72.**

United States District Court, District of Columbia.

March 23, 1973.

Herbert Hoffman, Washington, D. C., for the Government.

Edwin Brown, Elaine S. Kahn, D. R. Cervera, Washington, D. C., for defendants.

## OPINION

CHARLES R. RICHEY, District Judge.

### A. *Background and Chronology of Events*

This case came before the Court on May 24, 1972 for hearing on Defendants' Costa and Barnes' Motions to Suppress as Evidence the fruits of a search conducted on April 30, 1971 by the Metropolitan Police Department of Room 314 of the Holiday Inn located at 1501 Rhode Island Avenue, N. W. The instant indictment was filed on February 1, 1972, and is a re-indictment of Criminal Case No. 1533–71 which was dismissed by the United States on March 24, 1972. By stipulation of the parties approved by the Court, all findings and motions theretofore filed in Criminal Case No. 1533–71 were made a part of the record in the instant case.

The hearing on Defendants' Motions began in the afternoon of May 24, 1972, was reconvened at 9:00 a. m. the following morning, May 24, and concluded with the Court's oral ruling that same afternoon. In all, the official transcript was 131 pages. The Court heard extensive testimony from Officer Miller and Detective Estrada as well as Mr. Lashley, the manager of the Holiday Inn. Based on this testimony and the documentary evidence offered, the Court heard very able oral argument by counsel as to the very serious and difficult Fourth Amendment issue presented by Defendants' Motions.

Based upon the testimony adduced and arguments and memoranda of counsel, and after a great deal of reflection and deliberation, the Court ruled with some degree of reluctance, in light of the large amounts of narcotics involved herein, that the search of the room at issue had been conducted contrary to the proscriptions of the Fourth Amendment to the United States Constitution.

In so ruling the Court made the following findings of fact and conclusions of law:

"It is well-known that the Fourth Amendment to the Federal Constitution prohibits unreasonable searches and seizures. And, of course, it is also well-established that reasonableness must be decided on the facts in each particular case, and that good faith is one of the elements that must be considered in deciding whether a search in a given case was reasonable, although this concept is often utilized as a negative factor to invalidate a search where good faith is found lacking.

"To come to the particular point that we must deal with in this case, the court finds as a fact that there was sufficient time for the police to have applied for a warrant to search the premises, and the court further finds as a fact that there were no exigent circumstances shown by the evidence which necessitated action without a warrant.

"Accordingly, since the court has found that there was time to get a warrant, the search was unreasonable, and the motion to suppress will be granted.

"I might say that I make this ruling with some degree of reluctance, but this is the way I view the law, and perhaps a higher court will disagree." (Tr. 131–32).

The United States thereupon moved for a continuance in order to appeal the Court's ruling and the same was granted. An appeal was filed in the United States Court of Appeals for the District of Columbia Circuit, United States of America, Appellant v. Anthony J. Costa, et al., No. 72–1979, on October 17, 1972.

Subsequent to the filing of the appeal, in early February of 1973, the case of United States of America v. McKinney, 477 F.2d 1184 (D.C.Cir., decided January 15, 1973) came to the attention of the Court. Upon a reading of this case, the Court noted that *McKinney* was factually very similar to the situation presented in the instant case. Since the Court of Appeals in *McKinney* had upheld a

warrantless search quite similar to the one struck down by this Court in the case at bar, the Court felt that it was in the interest of both the Defendants and the United States for the Court to reconsider its prior ruling in light of the *McKinney* case and allow all counsel, both trial and appellate counsel, to aid the Court by way of an oral hearing and argument.

With this in mind, pursuant to the procedures set forth in Smith v. Pollin, 90 U.S.App.D.C. 178, 194 F.2d 349 (1952), the Court requested the United States Attorneys Office to move the Court of Appeals to remand the case to the District Court so that the Court could reconsider its ruling.[1] This was accomplished, and by order dated March 13, 1973, the Court of Appeals remanded the instant case to the District Court. A hearing was held on March 19, 1973 at which time the United States Attorney and Defendants' appellate and trial counsel argued based upon the record of the suppression hearing, whether the *McKinney* case was now controlling and should, as a matter of law, alter this Court's prior ruling. As will be discussed in more detail, *infra*, the United States urged the Court to vacate its prior suppression order arguing that the *McKinney* case "was on all fours," and therefore controlling, while the defense vigorously contended that *McKinney* was distinguishable and thus the Court should sustain its prior ruling and return the case to the Court of Appeals.

### B. *General Discussion*

In light of the serious nature of the charges involved herein, the difficult Fourth Amendment legal issues raised, and the right of both the Defendants and the people of the United States to be given a speedy and fair trial, the Court feels it necessary to go beyond the oral findings and conclusions it made at the conclusion of the hearing on the motions to suppress, and explain very carefully its reasons for ruling as it did.

This Court has often stated that "the public has the right to know" the reasons which underlie the decisions of those people to whom is granted the public trust, be they elected officials, administrative heads, or tenured judges. This is fundamental to a republican form of government, and is especially important today as we find ourselves confronted with a growing public distrust of governmental decisions in general, and Court decisions in particular. While it is true that the federal judiciary derives its strength from its independence, it is equally true that such independence and great power breed suspicion and distrust. As Thomas Jefferson once wrote in a letter to Thomas Richie, December 25, 1820, "A judiciary independent of the will of a king or executive is a good thing; but independence of the will of the nation is a solecism, at least in a republican government."

The charge is often heard that the Bill of Rights has been perverted by "soft-headed" judges, and that in a case as serious as the one at bar, to allow the criminal to go free because the constable has in good faith blundered is a gross distortion of justice and an insult to those citizens who do not choose to transgress the law, and who rely on the Courts for its protection.

The area of Fourth Amendment protections in particular has come under heavy criticism in recent years. While it is this Court's opinion that much of the criticism leveled at the last decade's enlargement of an accused person's constitutional rights is misguided, it is nevertheless understandable.

---

[1]. There seems to have been some breakdown in communication between the United States Attorneys Office and the Court in regard to the purpose for which the Court requested the remand. The Government's Motion spoke in terms of a remand to "vacate" rather than to "reconsider."

This misunderstanding, however, was rectified at the hearing held subsequent to the remand to the District Court, and the record is clear that the Court requested a remand for reconsideration of its prior ruling, not merely to vacate same.

■ It is not an unnatural reaction for the average citizen to become upset with the Courts when he sees a narcotics peddler not prosecuted because a judge has suppressed the evidence on what some would call a legal "technicality." The use of the word "technicality," however, distorts the important constitutional issues involved in determining the merits of a motion to suppress evidence based on alleged Fourth Amendment violations by law enforcement officials. The Constitution and Bill of Rights apply equally to *all* people, whether they be the police, a citizen on the street, or a suspected criminal. No matter how heinous the crime, the Courts must be ever vigilant to protect the rights of the accused in order to insure that the rights of the people are not eroded. To do otherwise would violate the sacred trust of the people and undermine "the right of the people to be secure in their persons, houses, papers and effects, and would obliterate one of the most fundamental distinctions between our form of government, where officers are *under* the law, and the police-state where they *are* the law." Johnson v. United States, 333 U.S. 10, 17, 68 S.Ct. 367, 370, 92 L.Ed. 436 (1948) (emphasis added).

The framers of the Constitution fashioned the Bill of Rights, not as an afterthought, but in order to secure for themselves and succeeding generations the highest degree of individual freedom and privacy in the history of mankind. But, as the Founding Fathers so clearly saw, to protect those freedoms, certain fundamental principles must be concretely protected against governmental encroachment. The protections of the Bill of Rights were adopted to accomplish this end.

Often the Court does not savor its role, as in the case at bar, where it must suppress narcotic evidence thereby effectively precluding a determination of innocence or guilt on the merits. It is bound, however, to apply the law to the facts presented. The Court is quite aware of the ghastly narcotics problems we have in this country today. Statistics have shown that in our large metropolitan cities the vast majority of the crimes of violence committed are drug related. This fact, however, must in no way cloud the Court's vision when it comes to determining whether a person's constitutional rights have been violated by an illegal search or arrest. The Court does not relish the thought of unscrupulous wholesale drug pushers going unpunished, but the fight against these people must not be carried on in a manner contrary to our fundamental law as contained in the Fourth Amendment.

While to some, the exigency of the drug situation may suggest that a loosening of the proscriptions of the Fourth Amendment is in order, this Court will not prostitute the protections of the Bill of Rights in the name of urgency or any other name. The battle to rid society of illicit drugs must be won within the framework of our Constitution lest we achieve a pyrrhic victory. The streets must be rid of the pusher, but not at the expense of justice, nor by compromise of individual liberty.

With this in mind, the Court will now discuss in detail the reasons for its original oral ruling on the motions to suppress, and what effect, if any, the Court feels the *McKinney* case has on that ruling.

C. *The United States Did Not Ssustain Its Burden of Showing That the Warrantless Search of Defendants' Room Was Justified Under Any Recognized Exception to the Warrant Requirement of the Fourth Amendment*

It is a well-established precept of constitutional law that:

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Coolidge v. New Hampshire, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) quoting Katz v. United States, 389 U.

S. 347, 357, 88 S.Ct. 507, 514, 19 L. Ed.2d 576 (1967).

"The burden is on those seeking the exemption to show the need for it." *Coolidge, supra,* quoting United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951).

The Government attempts to justify the warrantless search and seizure herein under two such exceptions. First, it is argued that the hotel manager's consent to the police entry of Room 314 after the rental period had allegedly expired made the entry valid. The Government contends that Defendant Barnes registered for one day only and made no payment for the room at that time. According to the testimony of Mr. Lashley, normal check-out time was 12:00 noon. Thus, the Government argues that at 4:00 p. m., the approximate time the police entered Room 314 for the first time, Defendants no longer had any proprietary interest in the room and the consent of the hotel manager was sufficient to obviate the necessity for a search warrant.

The defendants take issue with the Government's version of the facts and contend that Defendant Barnes in fact registered for two days, not one; that partial payment of the bill was paid at registration; and that proprietary interest in the room had not returned to the hotel at the time of the police search as was evidenced by the fact that the management had not removed the occupant's belongings. Such a removal of belongings was customary hotel policy in cases of delinquent renters, and indicated a reassertion of the hotel's full interest in the room and a divestiture of the interest of the former occupant.

Upon consideration of the respective contentions of the parties, the Court finds that the record reflects the following facts.

Government Exhibit # 1, the registration slip purported to be signed by Defendant Barnes, shows a check in time of 1:55 a. m., April 30, 1971, at a daily rate of $23.00 plus tax. Govern-

ment's Exhibit # 2, a receipt dated April 30, 1971 shows a partial payment of $24.00 on a $48.30 total bill, thereby leaving a balance due of $24.30. Mr. Lashley testified that no payment was made at registration in contradiction of Detective Estrada's recollection that Mr. Lashley had stated to him that partial payment had been made at registration. Mr. Lashley further testified that the receipt did show that the occupant of Room 314 was being billed for two days. The hotel did not remove the occupant's belongings thereby signifying termination of the occupant's rights in the room.

From the above facts the Court concludes that possession of Room 314 and the full panoply of rights commensurate therewith had not reverted to the hotel and were still vested in the registered occupant.

The actions of the maid who discovered the narcotics, and Mr. Lashley in reporting this find to the police, were exemplary and to be commended. However, the fact remains that the rental period had not ended and, though he may have acted in good faith, Mr. Lashley could not validly consent to a warrantless police search of Room 314 thereby waiving the occupant's constitutionally protected rights. Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961).

Secondly, the Government attempts to justify the warrantless search on the grounds of exigency. The doctrine of exigent circumstances is a well-established exception to the warrant requirement of the Fourth Amendment. Warden v. Hayden, 387 U.S. 294, 87 S. Ct. 1642, 18 L.Ed.2d 782 (1967); Dorman v. United States, 140 U.S.App.D.C. 313, 435 F.2d 385 (1970). However "[T]here must be 'a showing by those who seek exemption * * * that the exigencies of the situation made that course imperative.'" Coolidge v. New Hampshire, *supra,* 403 U.S. at 455, 91

S.Ct. at 2032, quoting McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

The Government argued at the suppression hearing, and argues in its appellate brief, that since it was possible for someone to have entered the room after the manager, Mr. Lashley, had left it, the police were justified in immediately entering the room to insure that nobody was there who could escape with the narcotics or destroy it.

■ The Court was not persuaded by this argument at the time of the hearing nor is it persuaded now. While it is true that it well might have been "possible" for someone to have sneaked into Room 314 without anyone noticing, it is highly improbable and there is no evidence in the record to support such a conclusion on the part of the police. It was a mere matter of minutes from the time that Mr. Lashley left Room 314 to the time the police arrived on the scene. Under these circumstances it is hardly reasonable to assume that someone had gotten back into the room and was making haste to destroy or flee with the evidence. There was simply no exigency in the situation and the proper procedure for the police to have taken at that point was to secure the area and apply for a search warrant.

D. *The Instant Case Is Not Controlled By McKinney Inasmuch As That Case Is Clearly Distinguishable On Its Facts*

While at first blush, the case of United States v. McKinney, *supra,* might appear, as the Government states, to be "on all fours" with the instant case, upon review of that opinion, the Court is satisfied that *McKinney* is distinguishable on its facts, and that this Court's prior ruling suppressing the evidence herein remains legally sound.

As was pointed out by the Defendants' Appellate counsel at the hearing subsequent to remand, *McKinney,* involves a warrantless search of a hotel room upon information supplied to the police by the management that an employee had seen a *sawed-off shotgun* on a night stand. The police were admitted to the room by the management, waited for the return of the occupant, arrested him and seized the shotgun. The Court of Appeals found no constitutional infirmity under those particular circumstances. The Court stressed, however, that *McKinney* "did not involve a 'complacent' crime but rather a grave offense which, if not a crime of violence strictly speaking, obviously posed a danger to the community." (477 F.2d at 1186). Later, the Court again emphasized the *type* of evidence in issue and that "this was a sawed-off shotgun, an ominous threat in and of itself. . . ." (477 F.2d at 1186).

The government argues that the case at bar is in no way different from *McKinney* because in both cases we are dealing with dangerous contraband. Counsel for the government stressed in his argument to the Court that heroin was as dangerous to the community, if not more so, than a single sawed-off shotgun.

While the Court is in full agreement with the Government that, in the long run, the large quantity of narcotics involved in the case at bar would pose more of a danger to the minds and bodies of Washington's people than the solitary *McKinney* shotgun, the Government misreads the thrust of what this Court perceives to be the true rationale behind the Court of Appeals' action in *McKinney.* There, the presence of a sawed-off shotgun posed an *immediate* danger to the safety of the community in general, and more particularly to the police who had responded to the management's call. It was this *immediate* danger that made the situation exigent and, therefore, justified a warrantless entry of the hotel room.

■ The case at bar involves narcotics only. Narcotics are dangerous but passive *per se.* They posed no *immediate* danger to the community or the police. Nor, as hereinabove stated, was there a justifiable belief that the drugs

were in danger of being spirited away or disposed of.

As Mr. Justice Jackson so eloquently stated in Johnson v. United States, *supra,* 333 U.S. at 14, 68 S.Ct. at 369:

"Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent."

Unfortunately, the right to search was not decided by a detached judicial officer in the case at bar, nor, was it justified by any exception to the rule. Consequently, the Court reaffirms its oral ruling of May 25, 1972 and Order of August 11, 1972 suppressing the contraband seized for use as evidence.