UNITED STATES of America, Appellee,

v.

John RUMPF, Joanne Hanson, Gloria Masters, and Gary James Griffin, Appellants.

Nos. 76–1891 to 76–1894.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 26, 1978.

Decided May 4, 1978.

Rehearing Denied June 8, 1978.

Jerry D. Patchen, Houston, Tex., Gerald M. Birnberg, Bellaire, Tex., Clarence D. Moyers, El Paso, Tex. (Samuel A. Francis,

Albuquerque, N. M., with them on the brief), for appellants.

Robert Bruce Collins, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., with him on the brief), for appellee.

Before SETH, Chief Judge, and BARRETT and McKAY, Circuit Judges.

SETH, Chief Judge.

The four defendants were convicted of conspiracy to possess marijuana with intent to distribute, contrary to 21 U.S.C. § 846, and have taken this joint appeal. The first trial ended with a mistrial, and the conviction concluded the second trial.

The appellants assert that there was no probable cause for their arrest, nor for the search of the farmhouse and barn where they were arrested and where the marijuana was found. The arrests and the initial search were made by DEA agents without warrants.

The appellants also argue that their motions raising the issue of double jeopardy, following the trial court's declaration of a mistrial, were erroneously denied, and further that defendants asked the trial court for an appeal from this denial, which request served to divest the trial court of jurisdiction to proceed with the second trial. In so urging, the appellants rely on *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651, which was decided during the course of this appeal. This Circuit had not passed on the issue of appealability of a denial of a motion based on double jeopardy.

A mistrial was declared at the conclusion of the opening statement for the prosecution at the first trial. The Assistant United States Attorney mentioned in this statement that there would be evidence as to the search of a farmhouse where papers of the defendant Hanson would be found. He also said, "They will also find three bags of marijuana and two syringes." The record shows that the attorneys for the defendants and the Assistant United States Attorney who made the opening statement had discussed just before trial the matter of the syringes. The attorney, Mr. Jerry Patchen, who with others had entered an appearance for defendant Hanson, advised the court when the Government's opening statement was concluded that he wished to make a motion. He asked to approach the bench and did so, as did the other attorneys representing the defendants. Mr. Patchen immediately said: "I would like to move for a mistrial because of the prosecutor's reference to the two syringes that were found in Joanne Hanson's apartment." He then told the court in effect that in the conversations that morning between the Assistant United States Attorney and the attorneys for the defendants (or some of them), it had been agreed that the syringes would not be introduced, and also would not be referred to at trial. The prosecution advised the court at this bench conference that it had been agreed that the syringes would not be introduced, but it had not been agreed that they would not be commented on. The court without more declared a mistrial. The defense attorneys at the bench conference other than Mr. Patchen said nothing whatever. The court then excused the jury. This was about 11:00 a. m. It appears that the second trial was then set to start, and did start, at 1:45 p. m. that afternoon or about two and one-half hours later.

Before the second trial began, all the defendants moved for dismissal on the ground of double jeopardy. The motions were denied. The following colloquy then took place: As to attorney Patchen, he said in part: ". . . I would like to give notice of appeal of the denial." The court said: ". . . You have ten days for that anyway." Mr. Patchen said there are five Circuits ". . . that indicate that we are entitled to an interlocutory appeal . . . May I give oral notice of appeal." The court, ". . . You certainly may." The attorney for the other defendants made a motion to dismiss because of "prior jeopardy." The motion was denied, and the attorney said: ". . . May we also request an interlocutory appeal at this time?" The court said: "Yes. Sure may, but it will be denied."

The court then asked the parties if they were ready for trial, and they announced they were. The second trial began, and no further action or procedure as to the "appeals" took place.

The defendants do not urge here that they asked for nor were denied any continuance or delay in the second trial to permit an appeal to be perfected or for any other purpose, and the record shows none. The second trial thus proceeded, and it appears that the matter rested there until this appeal was perfected. The appellants urged the appealability of the denial of the motion based on double jeopardy before the decision in *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651, as the issue had not been decided in this Circuit. *Abney* was decided during the pendency of this appeal, as mentioned above.

The Supreme Court in *Abney* points out that the need for considering a denial of a double jeopardy motion to be final for the purposes of appeal is to allow the assertion of the constitutional right before the defendant is confronted with a second trial. The Court refers to pretrial proceedings to consider the motion and to appeal the double jeopardy motion if denied by the trial court. Thus the protection is against being subjected to or threatened with a second trial, and the attendant delay. The protection is, of course, broader than against double punishment.

■ In *Abney v. United States*, 431 U.S. at page 661, 97 S.Ct. at page 2041, the Court said:

"... Because of this focus on the 'risk' of conviction, the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense. It thus protects interests wholly unrelated to the propriety of any subsequent conviction ..."

The Court there also quoted from *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 where reference is made to

subjecting the defendant to the embarrassment, expense, and ordeal, and compelling him to live in a continuing state of anxiety and insecurity. The Court in *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 described the protection by saying:

"... Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing ...."

The courts of appeal which reached the same conclusion before *Abney* followed the same reasoning, and made the same explanation for the need for a pretrial review. *See United States v. Barket*, 530 F.2d 181 (8th Cir.); *United States v. DiSilvio*, 520 F.2d 247 (3d Cir.); *United States v. Beckerman*, 516 F.2d 905 (2d Cir.); *Thomas v. Beasley*, 491 F.2d 507 (6th Cir.); *United States v. Lansdown*, 460 F.2d 164 (4th Cir.).

This is indeed the basic reason for the appealability conclusion, but here the defendants have already had a second trial. The "pretrial protection" from a second trial, until the double jeopardy issue is decided, cannot here be accomplished.

The reasons in *Abney*, the emphasis by the Court on pretrial protection, cannot be achieved. The second trial had already taken place before *Abney* was decided. We must hold in these circumstances that *Abney* is not applicable. A pretrial procedure to protect against a second trial cannot be utilized. If *Abney* were literally applied it could lead to a third trial under defendants' theory, and the problem would be compounded. Thus we cannot apply the *Abney's* construction of 28 U.S.C. § 1291 to these circumstances. *Abney* is a decision on 28 U.S.C. § 1291, and is as well a decision on the time for a challenge. It thus decides how and when a constitutional right may be asserted. Any application of *Abney* would lead to an incongruous result in the circumstances before us. Consideration has been given to the application of *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14

L.Ed.2d 601, and *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554.

It is also apparent that defendants made no effort, other than the oral notice of appeal, to have the matter determined before the second trial, and made no effort to perfect an appeal, if indeed one had been taken. The shortness of time and the related factors are apparent, but the appeal could well have been perfected as the second trial progressed or separately thereafter. This appeal must proceed on the basis that the double jeopardy issue is part of this appeal, and that the trial court was never divested of jurisdiction. We can only consider the double jeopardy claim of the defendants now since a pre-second trial consideration is not possible. The defendants thus present this constitutional issue as part of this appeal and first consideration should be given to the consequence of the motion for a mistrial voiced by Mr. Patchen, one of the attorneys for defendant Hanson. As described above, this motion was made at the end of the opening statement of the prosecution.

■ Mr. Patchen was the attorney who voiced the motion for a mistrial. The record does not show whether he moved only on behalf of defendant Hanson or for the others as well. He just said: "I move . . . ." etc. The other defense attorneys were at the bench, and made no statements whatever. They remained silent and the court proceeded. Under these circumstances, it is reasonable to construe their silence to be acquiescence in the statements of Mr. Patchen and in the motion for mistrial. They made no objection to the mistrial as they had adequate opportunity to do, and did not disaffirm the statement of Mr. Patchen. Under the circumstances, they were obligated to speak to express their position if they did not agree with the motion.

The docket as to the entry of appearances shows that Mr. Francis entered his appearance as attorney for each of the defendants. Mr. Moyers represented defendant Hanson and defendant Masters at trial and defendant Rumpf at sentencing. In view of the cross-representation of the several defendants, and their silence at the bench conference, we must hold, as above indicated, that all defendants acquiesced and thereby participated in the motion for mistrial. They had an obligation to speak, and their silence was an agreement in the course and position of the one who did speak.

■ The consequence of the motion for mistrial under these circumstances is clear. *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717, or *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, is a starting point, as could be *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543, or *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267. *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543; *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, and *United States v. Buzzard*, 540 F.2d 1383 (10th Cir.), establish that by moving for a mistrial, a defendant waives objection thereto if one is declared. This follows in the absence of bad faith conduct by the prosecution or the judge, *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267, or in the absence of governmental action intended to provoke a motion for mistrial or to secure a more favorable tribunal. If such bad faith is shown, there is no waiver of double jeopardy objection to a mistrial.

■ The defendants assert that the prosecution deliberately sought to get the two syringes into evidence, but the record does not support this argument in any way. The record shows only a misunderstanding between defense counsel and the prosecution as to a conversation before trial as to whether the syringes would be commented on or testified to. The reference to the syringes in the opening statement cannot be held to be "bad faith" conduct under *Dinitz*. Bad faith does not include mistakes or errors. *United States v. Jorn*, 400 U.S. 470. There was no conduct to provoke the motion for mistrial so as to relieve defendants from the consequences of a waiver of objections thereto.

The action of the trial judge in granting the motion for mistrial was done quickly, but the issue was narrow and uncomplicated. The defendants assert that the action was hasty, but again the matter was clear-cut, and in any event, it was taken on the request of the defendants.

■ We have held that the burden is on the defendant to establish the facts supporting his motion for dismissal on the ground of double jeopardy. *United States v. Wilshire Oil Co. of Texas*, 427 F.2d 969 (10th Cir.). This holding must still prevail under *United States v. Abney*, where the matter is to be disposed of in pretrial proceedings to include evidentiary hearings. This doctrine may have to give way to unusual circumstances where the proof may be in the control of the prosecution, or where it can only be established by the use of Government witnesses. In the situation before us, however, there are no factors precluding the application of the doctrine.

We thus hold that the second trial here appealed from was not shown to be barred by the prohibition against double jeopardy.

■ As to the arrests and the search, the defendant Griffin was charged only with conspiracy to possess with an intent to distribute marijuana. He claimed no interest in the premises searched nor in the items seized. Possession by Griffin was not an element of the charge against him. He had no standing to challenge the search and seizure under *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208.

■ As to the other defendants, the record shows that the DEA agents learned that a load of marijuana being flown from Mexico was going to land on State Road 117 south of Grants, New Mexico. The defendants were observed driving a Chevrolet Suburban and a pickup with a camper trailer into the area. The agents testified that these vehicles had been observed in connection with incidents involving marijuana. The vehicles went down State Road 117 and spent the night. The next morning the agents saw them emerging from the road on to the interstate highway. They fol-

lowed the vehicles about eighty to ninety miles to a farm near Moriarty, New Mexico. The agents testified that the trailer was heavily loaded and swayed. When the agents arrived at the farm they entered it and found marijuana in plain sight in the barn and smelled it in the camping trailer which was parked in the barn. The defendants were arrested. The agents had no warrant for search or arrest at the time. Later a search warrant was obtained, and the house was searched.

The Government urges that it was not possible during the time the agents were following the vehicles for them to secure warrants. The defendants argue there was not probable cause for the arrests and the search of the barn which revealed a large quantity of marijuana.

The record demonstrates that there was probable cause for the arrests and the search. The whole train of events, the prior connection of the vehicles with marijuana transactions, and the information that a plane would arrive were sufficient. The need to follow the defendants, and to take action immediately revealed exigent circumstances. *See Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *United States v. Sigal*, 500 F.2d 1118 (10th Cir.); *United States v. Miller*, 460 F.2d 582 (10th Cir.). We have held that smell alone is sufficient probable cause for a search. *United States v. Bowman*, 487 F.2d 1229 (10th Cir.); *United States v. Anderson*, 468 F.2d 1280 (10th Cir.).

We must hold that there was probable cause for the arrests and search. There was clearly sufficient evidence to support the convictions.

AFFIRMED.

McKAY, Circuit Judge, dissenting as follows:

The majority today holds that the decision of the Supreme Court in *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), is not applicable when a defendant lodges notice of appeal from a pretrial order denying a motion to

dismiss an indictment on double jeopardy grounds but cannot pursue the matter because of the uncertainty in the law with respect to its appealability. I disagree.

Prior to *Abney*, decided during the pendency of this appeal, five circuits had held that denials of pretrial motions to dismiss indictments on double jeopardy grounds are "final decisions" from which appeals may be taken pursuant to 28 U.S.C. § 1291 (1970), as interpreted by *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *United States v. Barket*, 530 F.2d 181 (8th Cir. 1975), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976); *United States v. DiSilvio*, 520 F.2d 247 (3d Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975); *United States v. Beckerman*, 516 F.2d 905 (2d Cir. 1975); *Thomas v. Beasley*, 491 F.2d 507 (6th Cir.), *cert. denied*, 417 U.S. 955, 94 S.Ct. 3083, 41 L.Ed.2d 674 (1974); *United States v. Lansdown*, 460 F.2d 164 (4th Cir. 1972). Two circuits had adopted the contrary position, holding that pretrial denials of motions to dismiss based on double jeopardy are appealable only as part of an appeal from the trial court's ultimate conviction. *United States v. Young*, 544 F.2d 415 (9th Cir.), *cert. denied*, 429 U.S. 1024, 97 S.Ct. 643, 50 L.Ed.2d 626 (1976); *United States v. Bailey*, 512 F.2d 833 (5th Cir.), *cert. dismissed*, 423 U.S. 1039, 96 S.Ct. 578, 46 L.Ed.2d 415 (1975).

This court had not decided the issue at the time of appellants' trial in the district court. When the trial court denied her pretrial motion to dismiss, appellant Hanson immediately brought to the attention of the court the above cited cases and stated her desire to "give notice of appeal of the denial." Record, vol. 4, at 188. The court responded "You have ample time for that. You have ten days for that anyway." *Id.* Appellant Hanson subsequently asked, "May I give oral notice of appeal?" *Id.* The court answered, "Yes, you certainly may." *Id.* The court then expressly acknowledged her request for an interlocutory appeal and ruled: "Fine, it will be denied." *Id.* at 190. The other appellants made identical motions to dismiss, gave oral

notice of appeal, and requested an interlocutory appeal. *Id.* at 190–91. These motions and requests for appeal were similarly denied by the district court. *Id.* The denial of pretrial motions to dismiss because of double jeopardy were incorporated in appellants' consolidated appeals taken from their ultimate convictions.

The threshold issue before us is whether appellants' notices of appeal had the effect of depriving the trial court of jurisdiction to proceed with the subsequent trial and convictions. If the court lacked jurisdiction to proceed, the subsequent trial, with its alleged errors, was a nullity and therefore not subject to our review.

This court has previously observed that "all of the cases hold that an appeal divests the trial court of jurisdiction over the case, but that presupposes that there is a' *valid appeal* from an *appealable order*." *Euziere v. United States*, 266 F.2d 88, 91 (10th Cir. 1959), *vacated on other grounds*, 364 U.S. 282, 80 S.Ct. 1615, 4 L.Ed.2d 1720 (1960) (emphasis added). *See Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338, 340 (10th Cir. 1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977); *Resnik v. La Paz Guest Ranch*, 289 F.2d 814, 818 & n. 2 (9th Cir. 1961); 9 Moore's Federal Practice ¶ 203.11, at 734–40 (2d ed. 1975). The necessary corollary of the above rule is that "[a]n attempt to appeal a non-appealable order remains just that, an attempt. It is a nullity and does not invest the appellate court with jurisdiction, and consequently does not divest the trial court of its jurisdiction." *Euziere v. United States*, 266 F.2d at 91. The critical questions for our consideration are: (1) whether the denial of appellants' pretrial motion for dismissal on double jeopardy grounds is an "appealable order," and (2) whether appellants made a "valid appeal."

At the time appellants' motion to dismiss the indictment on double jeopardy grounds was denied, this court had not decided whether such a denial was appealable. As noted above, five circuits had found this decision appealable, while two circuits had

found it nonappealable. It is clear, however, that the trial court considered his decision on this motion to be nonappealable. *See* Record, vol. 4, at 187–91. In *Abney* the Supreme Court agreed with the position of the majority of circuit courts and held that "pretrial orders rejecting claims of former jeopardy . . . constitute 'final decisions' and thus satisfy the jurisdictional prerequisite of § 1291." 431 U.S. at 662, 97 S.Ct. at 2042.

Since *Abney* was decided during the pendency of this appeal, appellants' case falls within the ambit of the rule reiterated in *Linkletter v. Walker,* 381 U.S. 618, 627, 85 S.Ct. 1731, 1736, 14 L.Ed.2d 601 (1965), "that a change in law will be given effect while a case is on direct review." This principle, first enunciated in *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110 (1801), applies to changes in case law, *Carafas v. LaVallee,* 391 U.S. 234, 241, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), *Vandenbark v. Owens-Illinois Glass Co.,* 311 U.S. 538, 541–43, 61 S.Ct. 347, 85 L.Ed. 327 (1941), as well as to statutory changes, *Carpenter v. Wabash Ry.,* 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940), and adoption of constitutional amendments, *United States v. Chambers,* 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763 01934). Under *Linkletter* we are bound by the *Abney* decision. We must hold that the denial of appellants' pretrial motion to dismiss the indictment on double jeopardy grounds is an appealable order.

Having decided that the pretrial order properly *could* be appealed to this court—thereby depriving the district court of jurisdiction to proceed with the case—we must decide whether appellants actually *did* make a valid appeal. We recently considered this very issue in *Arthur Andersen & Co. v. Finesilver,* 546 F.2d at 340–41, where we stated:

> An unpublished opinion in No. 75–1297, *Burnworth v. Salefish Incorporated,* says that the filing of a notice of appeal deprives the district court of subject matter jurisdiction. See also 9 Moore's Federal Practice ¶ 203.11, pp. 735–740. In *Euziere v. United States,* 10 Cir., 266 F.2d 88,

91, vacated on other grounds, 364 U.S. 282, 80 S.Ct. 1615, 4 L.Ed.2d 1720, we said that the mentioned principle "presupposes that there is a valid appeal from an appealable order."

The Circuits disagree on whether the filing of a notice of appeal automatically divests a district court of jurisdiction. Some cases hold that there is no retained jurisdiction. See e. g. *First National Bank of Salem, Ohio v. Hirsch,* 6 Cir., 535 F.2d 343, 345 n. 1; *United States v. Lafko,* 3 Cir., 520 F.2d 622, 627; and *Williams v. Bernhardt Bros. Tugboat Service, Inc.,* 7 Cir., 357 F.2d 883, 884–885. See also *Hovey v. McDonald,* 109 U.S. 150, 157, 3 S.Ct. 136, 27 L.Ed. 888.

Other courts have held that a district court has some retained jurisdiction after a notice of appeal has been filed. *Hodgson v. Mahoney,* 1 Cir., 460 F.2d 326, 328, cert. denied 409 U.S. 1039, 93 S.Ct. 519, 34 L.Ed.2d 488, says that when a notice of appeal is "manifestly deficient" by reason of a non-appealable order or otherwise, the district court may disregard it and proceed with the case "[o]therwise, a litigant could temporarily deprive a court of jurisdiction at any and every critical juncture." In *Ruby v. Secretary of United States Navy,* 9 Cir., 365 F.2d 385, cert. denied 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442, the Ninth Circuit considered the problem in an en banc session. It held, Ibid. at 389, that if the notice of appeal is clearly invalid, the district court may ignore it. We are in essential agreement with the Ninth Circuit. If the notice of appeal is deficient by reason of untimeliness, lack of essential recitals, reference to a non-appealable order, or otherwise, the district court may ignore it and proceed with the case. If the district court is in doubt whether the notice of appeal is valid, it may decline to act further until disposition of the appeal. If the district court proceeds with the case under the mistaken belief that the notice of appeal is inoperative, the complaining party may seek relief from the court of appeals under 28 U.S.C. § 1651 and Rule 21, F.R.A.P.

Appellants unequivocally gave notice of appeal in this case which was not deficient by reason of untimeliness or lack of essential recitals. Its deficiency, if any, was its reference to an order the trial court held was nonappealable. Although the conflict in judicial authority on the issue of appealability was presented to the trial court, he did not decline to act further until disposition of the appeal. Rather, he proceeded with the case under the mistaken belief that the notice of appeal was inoperative. Although appellants apparently did not attempt to seek relief from the court of appeals under 28 U.S.C. § 1651 (1970) and Rule 21, Fed.R.App.P., as suggested in *Arthur Andersen*, their failure to do so cannot alter the fact that under *Abney* their notice of appeal was not deficient by reason of its reference to an order denying dismissal of the indictment on double jeopardy grounds.

The majority places great weight on the fact that, after giving notice of appeal, appellants did nothing more to "perfect" their appeal. Yet Rule 3, Fed.R.App.P., specifically states the "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal." Once the trial court acknowledged and denied appellants' notice of appeal, they had no obligation to take any further procedural steps in order to "perfect" a valid appeal. *See Walleck v. Hudspeth*, 128 F.2d 343, 344 (10th Cir. 1942); 9 Moore's Federal Practice ¶ 203.12, at 740–42 (2d ed. 1975).

According to *Euziere*, appellants' valid appeal from an appealable order terminated the district court's jurisdiction and vested jurisdiction in the court of appeals. Since without jurisdiction the subsequent trial and convictions were a nullity, the judgment and sentences entered against appellants must be vacated.

This conclusion is supported by the only other circuit court opinion on this precise issue. In *Moroyoqui v. United States*, 570 F.2d 862 (9th Cir. 1977), the Ninth Circuit considered a case involving facts and trial court proceedings nearly identical to those now before us. There a mistrial was declared in the initial trial when the government introduced information prejudicial to appellant. Prior to the second trial the district court denied appellant's motion to dismiss the indictment on double jeopardy grounds. The trial court and appellant "agreed that the appeal would be 'lodged' but no attempt would be made to pursue it at that time." *Id.* at 863. Appellant then entered a guilty plea, but later appealed from his conviction, claiming that the Double Jeopardy Clause properly barred the second trial. Discussing the effect of *Abney*, which was decided during the pendency of the appeal, the Ninth Circuit held:

Applying *Abney* to our case, then, it is clear that when petitioner "lodged" his appeal from the trial court's denial of his claim, jurisdiction was conferred upon the court of appeals. As a consequence the trial court was without power to proceed with the trial. Under the unusual circumstances of this case, the failure to pursue the appeal does not alter this result. We must, therefore, set aside the appellant's conviction.

*Id.* at 864.

I would adopt both the reasoning and holding of *Moroyoqui*. Here written notice of appeal was not filed in the district court and no further steps were taken to "perfect" the appeal. However, like *Moroyoqui*, the court and appellants "agreed that the appeal would be 'lodged' but no attempt would be made to pursue it at that time." Under the circumstances it would be, at the least, extremely inequitable to require more of appellants to find a valid appeal.

The majority opinion asserts that the primary purpose underlying the *Abney* decision is protection from a second trial. It then argues that since the second trial has already taken place this policy cannot be achieved, and that *Abney* is therefore not applicable. Such a holding is an open invitation to trial courts to disregard *Abney*. Under the majority opinion, trial courts may ignore a notice of appeal from a pretrial denial of motion to dismiss on double jeopardy grounds and proceed instead to trial secure in the knowledge that the court

of appeals will not vacate the conviction for lack of jurisdiction. This result is precisely what the Supreme Court intended to eliminate when it explained in *Abney* that "the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence." 431 U.S. at 660, 97 S.Ct. at 2041.

The focus of concern in *Abney* is not on the judicial diseconomy of a second trial but on the protection of individuals from multiple exposure to the risk of conviction and the accompanying public embarrassment, personal strain and expenses. The Supreme Court instructed:

> To be sure, the Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment, as the Government suggests. However, this Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to *trial* for the same offense. . . . Because of this focus on the "risk" of conviction, the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense. It thus protects interests wholly unrelated to the propriety of any subsequent conviction. . . . Obviously, these aspects of the guarantee's protections would be lost if the accused were forced to "run the gauntlet" a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit. Consequently, if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs.

431 U.S. 660–62, 97 S.Ct. 2041–2042 (emphasis in original).

Unless we vacate the conviction of the trial court, the fundamental policy of *Abney* to make a double jeopardy challenge to an indictment "reviewable *before* that subsequent exposure occurs," would be utterly frustrated. While the majority emphasizes the need to protect appellants from personal strain, public embarrassment, and the expense of multiple criminal trials, appellants' very appeal on this issue illustrates that these interests, while "wholly unrelated," are yet secondary to the actual risk of conviction and punishment. Surely this court should not determine that appellants would rather serve their terms of imprisonment under the convictions of a second trial than suffer whatever personal strain, public embarrassment and expense might be associated with a third trial.

I agree with the majority that reprosecution of all appellants is not barred by the Double Jeopardy Clause. Inasmuch as reprosecution is not inevitable, however, the proper disposition of this case under the rationale and holding of *Abney* is merely to reverse and set aside the appellants' convictions.

Even assuming the district court had jurisdiction to proceed with the trial following appellants' motion to dismiss the indictment on double jeopardy grounds, I would nevertheless reverse on the merits. I cannot agree with the majority holding that the warrantless arrests, searches and seizures were based upon probable cause or justified by exigent circumstances.

Section 878(3) of Title 21 U.S.C. authorizes DEA agents to make warrantless arrests if there is "probable cause to believe that the person to be arrested has committed or is committing a felony." In determining the validity of a warrantless "public" arrest, the necessary consideration is not "the existence of exigent circumstances, whether it was practicable to get a war-

rant, whether the suspect was about to flee, and the like," but "whether there was probable cause for the arrest." *United States v. Watson*, 423 U.S. 411, 417, 423–24, 96 S.Ct. 820, 824, 828, 46 L.Ed.2d 598 (1976). *United States v. Santana*, 427 U.S. 38, 42, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), held that the threshold of one's dwelling may be a "public" place, by defining as "public" any place where one does not have any reasonable expectation of privacy. The applicability of the *Watson* rule dispensing with the need to show exigent circumstances in order to have a valid warrantless arrest therefore turns on whether any of the defendants were in a "public" place at the time they were arrested.

*Watson* does not address the issue of a warrantless search. Thus, a warrantless search which is not conducted incident to a lawful arrest or with the consent of the accused is generally invalid, absent a showing of exigent circumstances. In any event, there must be probable cause, and probable cause has the same meaning in search cases as it does in arrest cases. *Compare Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) (search), *with Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958) (arrest).

The record on appeal clearly indicates that DEA agents entered upon the private property of appellant Hanson not to conduct an investigation but to launch an attack that would produce arrests and uncover drugs suspected to be on the premises. One team of DEA agents, with weapons drawn immediately upon leaving the car, entered a barn or shed in back of the farmhouse, arrested Rumpf, and saw and smelled marijuana. Another team, with weapons similarly drawn, simultaneously apprehended appellants Hanson and Masters at the front door of the farmhouse. The prerequisite probable cause for any of the arrests or for a search of any part of the farm premises must therefore have existed prior to the agents' strategic attacks on the private farm property. Immediately prior to the surprise attack, the facts and circumstances known to the agents were the following: (1) Two vehicles were observed turning off Interstate 40 onto State Road 117 at 4:00 p. m. on April 20, 1976; (2) John Rumpf was known to be the driver of the Chevrolet van; (3) John Rumpf once rented a storage locker which, sometime subsequent to his abandonment thereof, was discovered to contain about an ounce of marijuana; (4) State Road 117 was believed to be an area frequented by narcotics smugglers, was called "Smuggler's Alley" by people in the area, and was the scene of a marijuana-loaded airplane crash several months before; (5) at 7:00 a. m. on April 21, 1976, the same two vehicles were observed turning onto Interstate 40 from State Road 117, and proceeding toward Albuquerque; and (6) the camper-trailer towed behind one vehicle appeared to be "heavily loaded" since it swayed whenever it changed lanes. Although probable cause does not contemplate anything approaching guilt beyond reasonable doubt, it certainly must be something more than mere suspicion. *Spinelli v. United States*, 393 U.S. 410, 414, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Jones v. United States*, 357 U.S. 493, 497, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); *Nathanson v. United States*, 290 U.S. 41, 46, 54 S.Ct. 11, 78 L.Ed. 159 (1933). Indeed, the facts and circumstances known to the agents in this case do not even rise to the level of those in *Spinelli*, which were found to be insufficient to constitute probable cause. The arrests and searches conducted here were based upon mere suspicion, not facts and circumstances that would warrant a man of prudence and caution in believing that the offense had been or was being committed. Since the core requirement of probable cause has not been satisfied, it is unnecessary to determine whether exigent circumstances existed or whether the barn or farmhouse were "public" property within the scope of *Watson* and *Santana*. The searches and arrests were invalid and appellants' motion to suppress the illegal evidentiary fruit of the unlawful conduct was improperly denied.

The plain view and plain smell arguments advanced by the government and accepted by the majority are also without merit. The main consideration in applying either

doctrine is to determine whether the observing officer has a right to be in a position to have that view or smell. *E. g., Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *United States v. Davis*, 423 F.2d 974, 977 (5th Cir.), *cert. denied*, 400 U.S. 836, 91 S.Ct. 74, 27 L.Ed.2d 69 (1970). The court observed in *Davis* that these doctrines lend themselves to application in cases involving evidence recovered from automobiles located in public places "because the observing officer is not required to trespass on private property in order to have a clear view [or smell] of articles inside an automobile." *Id.* On the other hand, where officers trespass in order to secure the view or smell the courts have not hesitated to find the search unreasonable. We have previously observed that "[t]he word 'houses' in the Fourth Amendment has been extended by the courts to include the curtilage," and that "[i]f the investigators [physically breach] the curtilage there would be little doubt that any observations made therein would [be] proscribed." *Fullbright v. United States*, 392 F.2d 432, 434–35 (10th Cir.), *cert. denied*, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 101 (1968). It is not asserted that the DEA agents saw or smelled any marijuana while they were surveilling the appellants along the highways, or that odors or views of marijuana were perceived by any agent prior to physically breaching the curtilage in which the farmhouse and adjacent barn were located. The smells and views came only after the agents had trespassed the protected area of the curtilage. The evidence thus discovered was inadmissible. It was not perceived by the eye or nose of an officer "who [had] a right to be in the position to have that view [or smell]," but was uncovered by an unreasonable search. *Harris v. United States*, 390 U.S. at 236, 88 S.Ct. at 993.

The Fourth Amendment:

was intended to protect against invasions of "the sanctity of a man's home and the privacies of life" . . . from searches under indiscriminate, general authority. Protection of these interests was assured by prohibiting all "unreason-

able" searches and seizures, and by requiring the use of warrants, which particularly describe "the place to be searched, and the persons or things to be seized," thereby interposing a "magistrate between the citizen and the police."

*Warden v. Hayden*, 387 U.S. 294, 301, 87 S.Ct. 1642, 1647, 18 L.Ed.2d 782 (1967) (citations omitted). The probable cause requirement is the core requirement both of a reasonable warrantless arrest, search, or seizure and for obtaining a warrant authorizing such actions. Yet, it is obvious that Fourth Amendment protections are much more effectively guaranteed by the use of warrants issued by a neutral magistrate:

The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. . . . When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by judicial officer, not by a policeman or Government enforcement agent.

*Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948) (footnote omitted). Although the need for aggressive law enforcement, especially in drug cases, is obvious, the interests of society are much better served by a determination of probable cause prior to the arrest or search. There is great danger that the ultimate fruits of an unlawful search or arrest will unduly color the judgment of judicial officers who examine probable cause with hindsight. The tendency to

evaluate the lawfulness of a search by the evidence it produces is especially strong in a case like this where 1500 pounds of marijuana are staring at the court. More troublesome than this specific case, however, are the cases we never decide in which the unlawful conduct of enforcement officials has resulted in serious invasions of privacy and harassment but has failed to produce the evidence necessary for a prosecution. We ought not encourage these judicially unseen invasions by relaxing the standards we apply to warrantless searches.

I recognize that many judges, in response to pressures from law enforcement officers, have developed special rules on probable cause in drug cases. These rules are justified on the basis of a quasi-national emergency caused by the "use and sale of illegal drugs [in] alarming proportions." W. Ringle, Searches and Seizures, Arrests and Confessions § 173 (Supp.1977). I nevertheless share the concerns of Judge Richey:

> While to some, the exigency of the drug situation may suggest that a loosening of the proscriptions of the Fourth Amendment is in order, this Court [should] not prostitute the protections of the Bill of Rights in the name of urgency or any other name. The battle to rid society of illicit drugs must be won within the framework of our Constitution lest we achieve a pyrrhic victory. The streets must be rid of the pusher, but not at the expense of justice, nor by compromise of individual liberty.

*United States v. Costa*, 356 F.Supp. 606, 609 (D.D.C.), *aff'd*, 156 U.S.App.D.C. 200, 203, 479 F.2d 921 (1973).